UNITED STATES *v*. WAKEM & McLAUGHLIN (No. 688).[1]

"GLASS ROSETTES"—ARTICLES OF GLASS, COLORED.

The goods in controversy are small hemispherical glass insulators, to the glass of which in a melted state an amber color has been given by mixing appropriate coloring matter. From its terms and its legislative history, paragraph 98, tariff act of 1909, must be taken to cover all articles of colored glass not otherwise specifically provided for, and the colored glass insulators here are dutiable as assessed under that paragraph.

United States Court of Customs Appeals, January 11, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7220 (T. D. 31586).

[Reversed.]

*Wm. K. Payne*, Deputy Assistant Attorney General (*Chas. Duane Baker* on the brief), for the United States.

*Lester C. Childs* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

This case involves the classification of so-called "glass rosettes," which were assessed for duty by the collector of customs at the port

of Chicago at 60 per cent ad valorem as articles of glass, *colored*, under the provisions of paragraph 98 of the tariff act of August 5, 1909, the parts of which paragraph material to this case are as follows:

98. Glass bottles, decanters, *and all articles of every description composed wholly or in chief value of glass*, ornamented or decorated in any manner, or cut, engraved, painted, decorated, ornamented, *colored*, stained, silvered, gilded, etched, sand blasted, frosted, or printed *in any manner*, or ground (except such grinding as is necessary for fitting stoppers or for purposes other than ornamentation), and all articles of every description, including bottles and bottle glassware, composed wholly or in chief value of glass blown either in a mold or otherwise; all of the foregoing, not specially provided for in this section,   *   *   *   sixty per centum ad valorem.   *   *   *

The importers objected to the duty assessed and among other grounds of protest set up the claim that the importation was a manufacture of glass or paste dutiable at 45 per cent ad valorem under the provisions of paragraph 109, which is as follows:

109. Stained or painted glass windows, or parts thereof,   *   *   *   *and all glass or manufactures of glass* or paste *or of which glass* or paste *is the component material of chief value*, not specially provided for in this section, forty-five per centum ad valorem.

The Board of General Appraisers sustained the protest and the Government appealed.

The board finds, and it is not disputed, that the goods the classification of which is in controversy are small, hemispherical glass insulators designed for the effective insulation of telegraph, telephone, and electric light wires. These insulators are referred to in the record as "glass rosettes" and are made of a glass to which while in a melted condition a rich amber hue has been imparted by the admixture of some appropriate coloring matter. On this state of facts the Government insists that the insulators are articles of colored glass and therefore dutiable as assessed under that part of paragraph 98 which imposes a duty of 60 per cent ad valorem on "all articles of every description composed wholly or in chief value of glass   *   *   *   colored   *   *   *   in any manner." To this the importers respond that colored glass articles and articles of colored glass are commodities quite different from articles of glass colored, and that as paragraph 98 was intended to cover articles and not materials processed as therein described, articles made of glass colored in the melting pot can not be assessed for duty thereunder. In support of this proposition counsel for the importers aver that cutting, engraving, painting, decorating, ornamenting, staining, silvering, gilding, etching, sand blasting, frosting, and printing are all processes which are applied to the article itself rather than to the substance of which it is made and that it would be unreasonable to suppose that Congress had sought out *coloring* for a wider significance. This contention of the importers is in line with the decision of the board which held that every one of the processes enumerated in the paragraph under consideration implied an addition to the articles

of glass *after they had taken on their form as such* and that therefore its provisions were not applicable to articles made of a glass which had been colored while in a molten condition. From this it is apparent that the importers' case and the board's decision rest, first, upon the postulate that there is a distinction between the processing of an article and the processing of the materials of which it is composed, and, second, upon the assumption that it was the intention of the legislator that such a distinction should be drawn as to articles of glass, colored.

We have no fault to find with the general proposition that materials, at different stages of their development into articles, may be subjected by Congress to varying rates of duty or that articles of the same kind, made of the same material, intended for the same purpose, and bearing the same colors, devices, and designs, may be made to carry a different duty simply because such colors, devices, or designs have been evolved by different methods. When it comes, however, to the concrete case before us we can not persuade ourselves that in passing paragraph 98 Congress was moved by any such considerations or that it was at all concerned in making a tariff distinction between colored-glass articles, articles of colored glass, and articles of glass, colored. Moreover, we can not admit that "every one of the processes enumerated in the provision implies work done upon the glass articles after they have been given their form as such." Such an interpretation would in effect limit the operation of paragraph 98 largely to articles made wholly of glass, and would exclude from its provisions those articles in chief value of glass which, after they had taken on their final form, could not in the nature of things be processed as therein described. That is to say, glass bottles, decanters, and vases, cut, engraved, painted, frosted, stained, or etched, after having taken on the form of their ultimate use, would be subject to the duty of 60 per cent ad valorem prescribed by the paragraph, but glass chandeliers composed of faceted glass shapes, necessarily cut before and not after they became a part of the article, artistic lamp shades made of bits of glass necessarily stained before they were put in place, fancy lanterns, the glass panels of which were necessarily engraved, etched, or frosted before they were framed, and all other forms or shapes made up chiefly of fitted sections of colored, painted, stained, printed, frosted, cut, engraved, etched, silvered, or gilded glass, and not otherwise specially provided for, would be dutiable as manufactures of glass or as manufactures of which glass is the component of chief value at 45 per cent ad valorem.

In our opinion neither the wording of the statute nor its legislative history justifies any such distinction or discrimination. In paragraph 98 Congress was not considering *articles* which had been sub-

jected to the treatment and processes of manufacture therein defined, but articles the glass of which had undergone the operations mentioned. Paragraphs 97 to 109 of the act deal with glass and have for their object the laying of a duty on glass in various forms and conditions. It would seem, therefore, that what interested Congress in passing paragraph 98 was the imposition of a certain duty, not on cut, engraved, stained, painted, or colored articles, but on articles of cut, engraved, stained, painted, or colored glass.

Possibly neither the board nor counsel for appellees really intended to be taken as holding that the processes mentioned were superadded to articles of glass after they became articles, but rather that they were processes superadded to the glass after it became glass. If such, however, is to be the interpretation of their position, then there is no escaping the conclusion that it is the processing of the glass rather than the article which determines classification under the paragraph at issue, and once it is admitted that Congress had in mind the processing of the glass the paragraph itself affords no sufficient basis for the assumption that all the processes therein enumerated were intended to be applied to that material while it was in any special state or condition. True, the cutting, engraving, painting, staining, silvering, gilding, etching, sand blasting, frosting, printing, and grinding of glass are necessarily processes imposed upon the glass after it has solidified, but the fact that these processes are enumerated in the same paragraph which provides for "articles of glass, * * * colored * * * in any manner" hardly warrants the deduction that the operation of that particular portion of the paragraph is limited to articles the glass of which has been colored after it has left the melting pot. Such a deduction could be sustained only on the theory that the principle of *ejusdem generis* was in some way applicable to the paragraph, and that whether an article of colored glass was *ejusdem generis* with the other articles therein enumerated was wholly dependent on whether the glass had or had not hardened when the color was imparted. We are not ready to go that far, especially as it would involve an extension of the benevolent doctrine of *noscitur a sociis*, which we are not prepared to make

. So far as we know there are but three distinct ways in which glass can be colored. It may be colored by mixing the pigment with the vitreous material while the latter is in a melted or semiliquid condition, in which case the color pervades the whole substance of the glass. It may be colored by staining, in which event the coloring matter is burned into the hardened surface but does not permeate the entire substance of the glass. It may be colored by painting or printing—that is, by simply spreading or imposing the colors on the surface in such a way that they do not become an integral part of the glass. With this as the state of the art of coloring glass it would

appear, therefore, that if any effect whatever is to be given to that part of the tariff act which provides for "articles of glass, * * * colored," it must be held to cover articles the glass of which is colored while in a fused or molten condition; or, to put it in another way, if all pot-colored glass is to be excluded from the paragraph, then, as a corollary to that proposition, it must be held that the provision therein for "articles of glass, * * * colored" is superfluous.

That goods made wholly or in chief value of glass colored in the pot were intended to fall under the cognizance of paragraph 98 of the tariff act of 1909 finds, we think, considerable support in the history of the tariff legislation here under consideration. The prototype of paragraph 98 of the present tariff act is to be found in the tariff act of 1862, which imposed a duty of 30 per cent ad valorem "on all plain and mould and press glassware, not cut, engraved, or painted," and a duty of 35 per cent ad valorem "on all articles of glass, cut, engraved, *painted, colored, printed, stained,* silvered, or gilded." These provisions were repeated in the tariff act of 1864 with no change other than that required by a 5 per cent increase of duty, and under them the Treasury Department ruled, in 1873, that glass wine bottles, colored a dark brown, were properly classifiable as articles of glass, colored, and red glass wine bottles were subsequently put in the same category (T. D. 1667; T. D. 3991). In 1879 certain circular glass disks or rondelles, some ruby, some blue, some green, and some blue with a red center, were classified by the collector at New York as "articles of glass, colored" and assessed for duty at 40 per cent ad valorem. Upon the protest of the importers that the rondelles were "plain glass" the Treasury Department ruled that the goods were "articles of glass, colored" and sustained the collector (T. D. 4206). These rulings apparently held good until 1899, when they were overturned by reason of certain modifications accomplished by the act of 1894 in the law as it stood immediately prior thereto.

The following provisions of the tariff acts of 1883, 1890, 1894, and 1897 will show the changes which gradually crept into the law and brought about a classification of certain kinds of glassware which we think Congress sought to correct by introducing the modifications and syntactic transpositions evidenced by paragraphs 97 and 98 of the tariff act of 1909:

TARIFF ACT OF 1883.

Schedule B.—Green and colored glass bottles * * * and other plain, molded, or pressed green and colored bottle glass, *not cut, engraved, or painted,* and not specially enumerated or provided for in this act, one cent per pound.

Articles of glass, cut, engraved, painted, colored, printed, stained, silvered, or gilded, not including plate-glass, silvered or looking-glass plates, forty-five per centum ad valorem.

* * * All other manufactures of glass or of which glass shall be the component material of chief value, not specially enumerated or provided for in this act, forty-five per centum ad valorem.

TARIFF ACT OF 1890.

103. Green, and colored, molded or pressed, * * * glass bottles, holding more than one pint, * * * and other molded or pressed green and colored * * * bottle glassware, not specially provided for in this act, one cent per pound. * * * (Like goods dutiable according to capacity.)

106. All articles of glass, cut, engraved, painted, colored, printed, stained, decorated, silvered, or gilded, not including plate glass silvered, or looking-glass plates, sixty per centum ad valorem.

108. * * * All other manufactures of glass, or of which glass shall be the component material of chief value, not specially provided for in this act, sixty per centum ad valorem.

TARIFF ACT OF 1894.

88. Green and colored, molded, or pressed; * * * glass bottles holding more than one pint, * * * and other molded or pressed green and colored * * * bottle glassware, not specially provided for in this act, three-fourths of one cent per pound. * * * (Like goods dutiable according to capacity.)

89. All articles of glass, cut, engraved, painted, colored, printed, stained, decorated, silvered, or gilded, not including plate glass silvered, or looking-glass plates, forty per centum ad valorem.

90. All glass bottles, decanters, or other vessels or articles of glass, when cut, engraved, painted, colored, printed, stained, etched, or otherwise ornamented or decorated, except such as have ground necks and stoppers only, not specially provided for in this act, including porcelain or opal glassware, forty per centum ad valorem. * * *

102. * * * All manufactures of glass, or of which glass is the component of chief value, not specially provided for in this act, thirty-five per centum ad valorem.

TARIFF ACT OF 1897.

99. Plain green or colored, molded or pressed, * * * glass bottles, * * * not otherwise specially provided for, * * * if holding more than one pint, one cent per pound; (like goods dutiable according to capacity): *Provided,* That none of the above articles shall pay a less rate of duty than forty per centum ad valorem.

100. Glass bottles, decanters, or other vessels or articles of glass, cut, engraved, painted, colored, stained, silvered, gilded, etched, frosted, printed in any manner or otherwise ornamented, decorated, or ground (except such grinding as is necessary for fitting stoppers), and any articles of which such glass is the component material of chief value, and porcelain, opal, and other blown glassware, * * * sixty per centum ad valorem.

112. * * * All glass or manufactures of glass or paste, or of which glass or paste is the component material of chief value, not specially provided for in this act, forty-five per centum ad valorem.

A comparison of these several tariff enactments will show that in 1890 the word "decorated" was introduced for the first time into the provision for articles of glass, cut, engraved, etc. The provision thus amended was reenacted word for word in 1894 and then repeated in a modified form in an entirely new paragraph, known as paragraph 90, which imposed a duty on "articles of glass *when* cut, engraved, painted, colored, printed, stained, *etched, or otherwise ornamented or decorated,* except such as have ground necks and stoppers only." In 1897 paragraph 106 of the tariff act of 1890, which, with the exception of the rate, had been carried bodily into the tariff act of 1894 as paragraph 89, was eliminated and paragraph 90 of the

tariff act of 1894 was amended, first, by adding "silvering, gilding, and frosting" to the processes enumerated; and second, by striking out the words "except such as have ground necks and stoppers only" and inserting in lieu thereof *after* the word "decorated" the words "or ground (except such grinding as is necessary for fitting stoppers)." Notwithstanding these changes there seems to have been no question raised as to the classification of the merchandise imported under the modified provisions until the year 1899, when the Circuit Court of Appeals, in the case of Koscherak v. United States (98 Fed. Rep., 596), decided that the enumeration in paragraph 90 of the tariff act of 1894 of several processes, succeeded by the phrase "or otherwise ornamented or decorated," necessarily implied that only those articles of glass which had been ornamented or decorated by the processes so enumerated were within the terms of the paragraph. Following this decision, all articles of glass, cut, engraved, painted, colored, printed, stained, or etched for a utilitarian and not for an ornamental or decorative purpose were excluded from the operations of paragraph 90 of the tariff act of 1894 and its successor, paragraph 100 of the tariff act of 1897. *In re* Eimer & Amend (T. D. 22687); *in re* R. Hoehn & Co. (T. D. 24160); *in re* R. Hoehn Co. (T. D. 24514); *in re* Hensel (T. D. 26988); Hempstead v. United States (122 Fed. Rep., 752); United States v. Hesse (141 Fed. Rep., 492). Articles the glass of which was ground were held, however, to be subject to the provisions of those paragraphs without regard to whether such articles were or were not ornamented or decorated by the grinding. McMullen v. United States (123 Fed. Rep., 847).

As a result of the Koscherak decision it became necessary to determine in each case whether the effect produced by any of the enumerated processes, except grinding, was decorative or ornamental, and gradually there were developed certain deductions and conclusions which went somewhat farther than the original decision, but which were justified in a measure by its reasoning and by the exigent necessity of reconciling two provisions carrying different rates of duty for colored glass bottles.

In T. D. 23794 the board found as a fact that the coloring of certain glass beads did not amount to an ornamentation and that therefore, in accordance with the rule laid down in the Koscherak case, the beads were not dutiable under paragraph 100 of the act of 1897.

Then came T. D. 24547, in which the board held that a *plain black coloring* of glass could not be construed to be an ornamentation or decoration within the meaning of paragraph 100, and that inasmuch as paragraph 99 covered "plain green or colored glass bottles" *no plain color per se could be considered* as ornamental or decorative.

Then followed T. D. 24677, in which it was decided that glass pens made of white glass with black glass holders fused thereon, the color-

ing having been imparted during the making of the glass, were *plain colored glass* and therefore not ornamented or decorated.

In T. D. 24991 the board held that *a plain color was a single solid color*, and that 6,000 glass cubes, some colored red, some blue, others gilded, and all intended for the making of ornamental figures and designs for a church altar, were not dutiable as "articles of glass, * * * colored, * * * stained, * * * gilded, * * * or otherwise ornamented or decorated." See also T. D. 25509, T. D. 26111.

Finally, in T. D. 26933, the board decided that pendants for chandeliers made of glass, colored yellow in the pot, were within the reasoning of T. D. 24991, and that as they were *pot colored and not colored by a superadded process* they might well be regarded as ornamental glassware, but certainly not as ornamented glassware.

From these cases it is evident that what bothered the tribunals charged with ascertaining the meaning of paragraph 90 of the tariff act of 1894 and paragraph 100 of the tariff act of 1897 was not whether the processes enumerated in those provisions were superadded or whether such processes were intended to be applied to the material rather than the article after it had taken on its form as such, but whether a resulting effect of such processes instead of the processes themselves should determine classification. Besides all that, the necessity of reconciling paragraph 88 with paragraph 90 of the tariff act of 1894 and paragraph 99 with paragraph 100 of the tariff act of 1897 had proved to be an awkward task. To give effect to conflicting provisions imposing different rates of duty on colored-glass bottles the board had started out with the proposition that no plain color *per se* could be considered ornamental or decorative. Subsequently a plain color had to be defined, and that was done by declaring it to be a single solid color. As single solid colors were imparted to the glass while it was melted, it was an easy step to the declaration that pot-colored glass, or glass not colored by a superadded process, was not ornamented or decorated glassware. During this period, however, neither the courts nor the board ever attempted to draw any distinction between "articles of glass, colored" and "colored-glass articles" or "articles of colored glass." Indeed, the difficulty of reconciling the paragraphs just mentioned lay precisely in the fact that the board recognized that "colored glass bottles" and "glass bottles, colored" were both articles of colored glass and that if any distinction was to be drawn between them it would have to be drawn on the basis of the effect of the coloring and not on the method of producing it. With this as the situation confronting Congress at the time the tariff act of 1909 was under consideration, we can not but think that the changes wrought by that enactment in paragraphs 99 and 100 of the act of 1897 were designed to meet the construction put upon those para-

UNITED STATES v. ZINN.

graphs by the tribunals charged with their interpretation. Informed by the case of McMullen v. United States (123 Fed. Rep., 847) that the reasoning of the Koscherak case might be avoided by a mere transposition of words, Congress made the transposition and, as evidenced by paragraph 98 of the tariff act of 1909, articles of glass subjected to certain enumerated processes were put upon the same footing as articles of ground glass, that is to say, dutiable by reason of the process and without regard to the incidental effect produced. (Notes on Tariff Revision, pp. 114–117.) More than that, to emphasize its intention that the ornamental or decorative effect of the coloring should no longer be a factor in determining the classification of articles of colored glass Congress so modified that part of paragraph 99 of the tariff act of 1897 covering colored glass bottles that its operation in paragraph 97 of the new law was limited to such bottles as were of the character ordinarily employed as containers for the holding or transportation of merchandise. This change did away with the apparent conflict theretofore existing between paragraphs of the law presumptively entitled to equal consideration, and so identified the colored glass bottles covered by one provision as to make it comparatively easy to distinguish them from those covered by the other. From its language and legislative history we are satisfied that paragraph 98 of the tariff act of 1909 was intended to cover all articles of colored glass not otherwise specifically provided for, and that therefore the colored glass insulators here in question were dutiable as assessed by the collector.

The decision of the Board of General Appraisers is *reversed*.