ILLFELDER & Co. *v.* UNITED STATES (No. 1580).[1]

1. "WATER COLOR BOXES," HOW DUTIABLE.

Merchandise consisting of small boxes containing water colors of good quality and articles incidental to their use, designed, adapted, and used for elementary instruction in art and used to some extent also by artists, is not dutiable as toys under paragraph 342, tariff act of 1913, but as artists' paints or colors under paragraph 63.

2. CONSTRUCTION—DOUBT FAVORS IMPORTER.

All other things being equal the importer is entitled to the benefit of the doubt.

3. TOY, WHAT IS NOT.

An article designed, adapted, and used for serious instruction, no matter how elementary, and not for the amusement of children at play, is not a toy.

United States Court of Customs Appeals, March 28, 1916.

APPEAL from Board of United States General Appraisers, Abstract 37852.

[Reversed.]

*Allan R. Brown* for appellants.

*Bert Hanson,* Assistant Attorney General (*Harry M. Farrell,* special attorney, of counsel), for the United States.

[Oral argument Dec. 8, 1915, by Mr. Brown and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The present importations consist of small wooden boxes containing water colors, crayons, brushes, and drawing materials, and are called water-color boxes.

The collector classified these as toys, and accordingly assessed duty thereon at 35 per cent ad valorem under paragraph 342 of the tariff act of 1913.

The importers protested against the assessment, claiming the goods to be dutiable at 15 per cent ad valorem as paints or colors under the first clause of paragraph 63 of the same act; or alternately at 20 per cent ad valorem as artists' paints or colors, or as color lakes under the second or third clause of the paragraph. In their petition in this court the importers rely upon the claim that the merchandise is dutiable at 20 per cent ad valorem under the provision of paragraph 63 aforesaid for "all paints, colors, and pigments commonly known as artists' paints or colors, whether in tubes, pans, cakes, or other forms."

The protest was submitted upon testimony to the Board of General Appraisers, and was overruled. The importers appeal.

[1] Reported in T. D. 36311 (30 Treas. Dec., 593).

The two paragraphs which are thus drawn into question read as follows:

63. Enamel paints, and all paints, colors, pigments, stains, crayons, including charcoal crayons or fusains, smalts, and frostings, and all ceramic and glass fluxes, glazes, enamels, and colors, whether crude, dry, mixed, or ground with water or oil or with solutions other than oil, not specially provided for in this section, 15 per centum ad valorem; all paints, colors, and pigments commonly known as artists' paints or colors, whether in tubes, pans, cakes, or other forms, 20 per centum ad valorem; all color lakes, whether dry or in pulp, not specially provided for in this section, 20 per centum ad valorem.

342. Dolls and parts of dolls, doll heads, toy marbles of whatever materials composed, and all other toys and parts of toys not composed of china, porcelain, parian, bisque, earthen, or stone ware, and not specially provided for in this section, 35 per centum ad valorem.

As has been stated, the collector assessed the present articles as toys, and the board sustained the assessment, whereas the importers claim that the articles are not toys but are artists' paints or colors.

The articles in question consist of brightly painted wooden boxes, about 10 inches in length, 6 inches in width, and 2 inches in depth, divided into compartments containing 18 small cakes of water colors, a number of colored crayons, a lead pencil, a small rule, some blotting paper, a small hairbrush, and several glass and metal receptacles for holding water or for mixing the colors. The boxes are labeled "colours free from poison." A small printed pamphlet is held in the box by means of an elastic, containing certain advertising matter together with several sketches. The sketches are in duplicate, one being in black and white, the other being in colors. The evident purpose of these is to have the colored sketch serve as a model for the painting of the similar black and white ones. The boxes retail at about $2 apiece.

A number of witnesses testified at the trial before the board, and in some particulars it might be wished that the testimony were more complete and specific. However, it was stated that the outfits are known as "water-color boxes," and that the paints contained therein are of the same quality as those used by artists. It was stated that the present cakes are too small and the brush too flimsy for use by "master artists," but that such outfits are, in fact, used by beginners in painting, and may be found in almost every public school where art is taught. It was also stated that the outfit is particularly designed for the use of children in schools who have in view taking up a course in art. It was said by one of the witnesses that "not infrequently I see girls that come in to take lessons—you know, they do work at home—they not infrequently have outfits of this type in their portfolios, and they use them in a practical way." The witness also stated that the articles are "principally designed for children, children who have in view taking up a course in art." An-

other witness testified that the present outfits are used by adults as well as by children, adding, " I have used them myself * * * making up illustrations, sometimes make up new designs for toys or articles I want to get up. * * * I have used them with a stock just like these here." It was also stated by one of the witnesses that the articles are generally handled by the artists' materials and stationery departments of department stores.

Upon the other hand the Government examiner testified that the articles are suitable for the amusement of children as toys, although " school children may use them "; that they are principally imported by toy dealers, that is to say, by people who deal to a greater or less extent in toys; that the importations now in question were in fact invoiced by the manufacturer as " toy boxes." It appears from the examiner's testimony that for a period of 20 years preceding this case outfits like the present ones were returned for duty as artists' colors, and not as toys. It may be assumed that during that period the articles were assessed with duty according to these returns. The examiner explained that this course was followed because of a former board decision which drew a line of demarcation in respect to such outfits according to their price, those whose price exceeded a certain sum being returned as artists' colors, and those having a smaller price being returned as toys. This practice was abandoned under the present act because of later decisions of the board and of this court which held that price alone was not necessarily determinative in the classification of such articles, but that their character and use must likewise be considered. G. A. 7251 (T. D. 31786); United States *v.* Kraemer & Co. (5 Ct. Cust. Appls., 294; T. D. 34474).

Upon the testimony, including the exhibits, keeping in mind also the rule that all other things being equal, the importer is entitled to the benefit of the doubt, we reach the conclusion that the present articles are " reasonably fitted " for other uses than that of toys, namely, for use as a means of serious instruction for beginners in the study of art, and also for making up illustrations for new designs of toys or other articles, as stated by one of the witnesses above quoted. As a result of this conclusion we hold that the articles are not dutiable as toys, but are dutiable as artists' paints or co[...] Illfelder *v.* United States (1 Ct. Cust. Appls., 109; T. D. 311[...]

It may be noted that the use which is made of the prese[...] for the instruction of beginners in art differs from the use[...] made of toys in kindergarten schools, for in such schools[...] engage in various sports and games by means of the sam[...] those used in their sports outside of school, whereas[...] articles are used in schools as a means of instruction not by[...] sport or game but in quite as serious a manner as any other mode[...]

instruction, even if less advanced. United States *v.* Meier & Frank (5 Ct. Cust. Appls., 208; T. D. 34330).

The collector's assessment and the board's decision sustaining the same are therefore reversed, and reliquidation is ordered at the rate of 20 per cent ad valorem, as claimed by the importers' protest.

*Reversed.*