SMITH & Co. v. UNITED STATES (No. 1828).[1]

1. CONSTRUCTION, PARAGRAPH 84, TARIFF ACT OF 1913—"ORNAMENTED OR DECO-
      RATED IN ANY MANNER."
   The expression "ornamented or decorated in any manner" (par. 84, tariff act of 1913) should not be construed to mean that an article, to be dutiable under the paragraph, must have been ornamented or decorated by a process different from that of its manufacture.

2. GLASS BOTTLES, ORNAMENTALLY MOLDED.
   Thin glass bottles, having figures of sprays of leaves and fruits molded into the glass as a part of the manufacture of the bottles, are dutiable under paragraph 84, tariff act of 1913, as "glass bottles * * * ornamented or decorated in any manner," and not under paragraph 83 as "plain green or colored, molded or processed * * * glass bottles."

United States Court of Customs Appeals, February 8, 1918.

APPEAL from Board of United States General Appraisers, Abstract 40693.

[Affirmed.]

---

[1] T. D. 37535 (34 Treas. Dec., 139).

B. A. Levett for appellants.

Bert Hanson, Assistant Attorney General (*Thomas J. Doherty* and *Charles D. Lawrence*, special attorneys, of counsel), for the United States.

[Oral argument Oct. 11, 1917, by Mr. Levett and Mr. Lawrence.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise consists of thin glass bottles having figures of sprays of leaves and fruits, which are molded into the glass and not added by a separate or additional process. The board held that they were dutiable under paragraph 84 of the tariff act of 1913, and in so doing determined that they were ornamented, within the meaning of said section.

Paragraph 84, so far as necessary to be quoted, reads as follows:

Glass bottles * * * composed wholly or in chief value of glass, ornamented or decorated in any manner, or cut, engraved, painted, decorated, ornamented, colored, stained, silvered, gilded, etched, sand blasted, frosted, or printed in any manner, or ground (except such grinding as is necessary for fitting stoppers or for purposes other than ornamentation), and all articles of every description, including bottles and bottle glassware, composed wholly or in chief value of glass blown either in a mold or otherwise; * * *.

The claim of the importers is that the bottles were "plain green or colored, molded or processed * * * glass bottles * * *" (par. 83).

The question is whether, before a glass bottle can be brought within the terms of paragraph 84 as ornamented or decorated in any manner, it must appear that there has been a process of decoration after the bottle was molded. In other words, whether the decoration must be by a superadded process after the article itself is complete for use.

The board held that the question was ruled by United States *v.* Wakem (2 Ct. Cust. Appls., 411; T. D. 32170), and that the ornamentation, although produced in the process of molding the bottle, was sufficient to bring it within paragraph 84.

A case involving a question something like that here presented, but arising under a statute differing substantially from the present, was considered by the board some years ago. The case arose under paragraph 435 of the act of 1897.

In T. D. 24581 the articles in question were imitation cameos and intaglios. The language of the paragraph construed was—

Imitation of diamonds or other precious stones, composed of glass or paste, not exceeding an inch in dimensions, *not engraved, painted, or otherwise ornamented or decorated.*

The board, in a very exhaustive opinion by De Vries, General Appraiser, held that as the testimony disclosed that "the associated

words 'engraved' and 'painted' preceding the words 'or otherwise ornamented or decorated' are used in a descriptive, ordinary sense, it is fairly within the principle of noscitur a sociis that the latter are used in the same sense," and applying the rule of ejusdem generis held that the term "otherwise ornamented or decorated" should be construed to mean an ornamentation by a superadded process. It was said:

The words here are "not engraved, painted, or otherwise ornamented or decorated." The enumerated things or descriptions "engraved" and "painted" both imply a superadded process. The rule cited prescribes this qualification and characteristic to the words "ornamented or decorated."

After stating the doctrine of ejusdem generis it was further said:

It may be instructive to advert to paragraph 100 of the same act, where Congress, in speaking of china and earthenware, uses the language "or otherwise decorated or ornamented *in any manner*." In obedience to the rule that effect must be given all words in a statute, the words "in any manner" must either be regarded as superfluous or there be assigned *to the preceding language* the limitation suggested, which is *extended* by the subsequent words "in any manner." Their absence in the paragraph under consideration suggests the presence of legislative intent that the scope of the words "otherwise ornamented or decorated" be limited in accordance with the well-known and settled rule stated, which conduces to the conclusion that they apply solely to superadded ornamentation or decoration.

So far from ruling the case in hand, this case strongly tends to support the contention of the Government that the broad language of paragraph 84 is sufficient to cover the imported merchandise.

We refer to this case at some length for the purpose of showing that the conclusion reached in the opinion in that case that the term "ornamented or decorated" used in paragraph 435 of the act of 1897 implied effects produced upon cameos and intaglios by a superadded process and not to effects produced in molding them, was rested upon the rule of ejusdem generis. As indicating that such was the rationale of the opinion, it appears that the writer of the opinion was at pains to demonstrate that the Congress had in paragraph 100 of the same act used the terms "decorated and ornamented in any manner" in such a way as would involve and require an extended meaning to the words rather than the one adopted in the instant case. If it was intended to detract from this statement by the statement in the opinion referring to T. D. 15169, T. D. 15170, and T. D. 15171 as establishing that ornamentation could only consist of a superadded decoration, it is with deference submitted that these cases were misinterpreted, and that such was not the ruling in the cases cited. It is true that the board in these cases, in three opinions all written by Lunt, General Appraiser, construed paragraph 100 of the act of 1890 and held that certain white china ware, which had designs upon the surface raised or embossed with figures produced by molds, was plain white china. But it is important to know the grounds upon which this holding rested. In the first of these cases it was said:

It also appears from the evidence that the word or term "decorated" as applied to china and earthenware has been for many years a *commercial term* designating and confined to ware which has been painted, tinted, stained, enameled, printed, or gilded, but that the word "ornamented" never has been a trade term  *  *  *.

It is difficult to formulate in words a clear and sharply drawn distinction between plain white ware and that which should properly be considered ornamented. Something depends upon the material of which it is composed. A white china or porcelain body may be etched and thus ornamented or decorated, although no colors are used, but the same process could not be used upon ware having a less vitreous body, which would be penetrated and discolored in the treatment or by subsequent use.

The chinaware under consideration in this case is entirely white. From the appearance of the samples no labor or skill was expended upon it after the ware or the several parts were molded. It shows no evidence of the use of stylus thereon, or that anything in the character of ornamentation was added to the body of the ware after the original molding thereof. As understood by *importers, wholesale dealers, and manufacturers*, this ware is plain white china, although the outlines or surfaces thereof are not perfectly smooth. The proper classification of ware embraced in paragraphs 100 and 101 of the tariff requires the exercise of *an intelligent discrimination*, based upon an examination of the *particular* ware and some knowledge of the manner of its manufacture.

### In defining the kind of ware in the second case the board said:

We find  *  *  *  that said chinaware consists of sauce boats with rustic handles, so-called shell pickle dishes, and cups, very slightly fluted and with rustic handles. All of this ware is white, and all the surface outlines thereof were formed in the mold. This ware is for purposes of utility and does not belong to the class of china known in trade as decorated china nor to the class known as art goods.

The variations in the surface of this ware are not such as are superimposed upon the ware after it is molded and before the final firing of the same, and in the opinion of the board are not of that character or *degree* which would be *considered an ornamentation sufficient* to remove the ware from classification as plain white china.

### In the third case it was said:

This ware does not belong to the class which is ornamented with elaborate and beautiful figures, commonly known in trade and commerce as art ware and which is not generally intended for purposes of utility. On the contrary, the merchandise in question is known *in trade and commerce as white graniteware*, and is designed solely for use. It is plain white, not painted, tinted, stained, enameled, printed, gilded, or otherwise decorated, and we find that the fluting, figuring, or variations in general outlines are *not sufficient in kind or degree* to remove the goods from classification as plain white earthenware.

These cases fall far short of holding that an article of china may not be decorated or ornamented within the meaning of this provision in the original process of manufacture. In fact, we think the contrary is implied, and in so far as they assumed that the language of the statute of 1890 is subject to be controlled by proof of commercial usage, were in conflict with the opinion of De Vries, General Appraiser, in T. D. 24581. His opinion in that case, after referring to the testimony of commercial usage, said:

Admitting that such usage exists, which seems to have been established, we do not think it controls in the interpretation of these words. The words used by Congress are clearly descriptive, relate solely to a process and not to a particular article, and are plain and unambiguous.

Citing and quoting from Newman v. Arthur (109 U. S., 132) and Koscherak v. United States (98 Fed., 596).

The opinions of Lunt, General Appraiser, do not deal with the question discussed as to the effect of the language of paragraph 100, and in so far as they conflict with Judge De Vries's opinion, they were overruled by that.

It has been suggested that the term "ornamented" ex vi termini imports a superadded process after the article is manufactured and that this is established by lexicographers and also by the use given to the term in various legislative acts. I do not so read the definitions given by the lexicographers, nor do I so construe the statutes.

Quoting from Webster's New International Dictionary:

Ornament.— * * * 2. That which is added to embellish or adorn; that which adds grace or beauty, an embellishment; a decoration; an adornment.

We do not construe this to mean that the addition to the utilitarian feature of the article must be made after the article is completed, and under this very definition in Webster an illustration is given which demonstrates that such is not the meaning. I quote again:

Ornament, as in architecture, is often distinguished as *structural* when it is an integral part of what it adorns; or as *applied* when executed on the surface of something structurally complete without it.

And the next definition:

2. Addition or *inclusion* of anything that beautifies; ornamentation; embellishment; decoration.

So, in the Standard Dictionary, the definition of ornament is—

1. A *part* or an addition that contributes to the beauty or elegance of a thing.

This clearly does not import that an ornamentation may not be by the original process of construction.

Now, as to the statutes, we find in paragraph 84 of the act of 1894 a provision for "china, porcelain, parian * * * crockery ware, * * * white, not changed by the addition of *superadded* ornamentation or decoration, 30 per centum." And under the act of 1897 we find another instance where the Congress thought best to place a restricted meaning upon the word "ornamentation," which it did in terms. Paragraph 95 of the act of 1897 provides for china and porcelain and then proceeds, "if plain white and without *superadded* ornamentation of any kind, 55 per centum ad valorem."

Attention has been called to the expression in paragraph 358 of the present tariff act providing for "braids, loom woven, and ornamented in the process of weaving." Here Congress was dealing with woven articles, and the use of the term "ornamented in the process of weaving" was a use of the term quite in consonance with the illustration given in Webster. If it be asked, Why add the

words "in the process of weaving"? I assume it was for the purpose of distinguishing between such ornamentation and superadded ornamentation, as by appliquéing.

In line with the dictum in Judge De Vries's opinion is the opinion of Fischer, General Appraiser, in T. D. 34888, in which, affirming the holding that sprinkler tops, the screw covers of which had embossed on the tops thereof a design representing a basket of flowers, were decorated, within the meaning of a provision for decorated, colored, waxed, lacquered, enameled, lithographed, electroplated, or embossed in color, it was said:

It is not essential that a decoration should be the result of an added process, because many articles can be and are made ornamental and of a decorative character simultaneously with their production.

(Citing the case of United States *v.* Wakem, supra.)

It seems to me that a rule has been established by this court which should not be departed from. In United States *v.* Wakem, supra, we construed a paragraph which in all essential respects corresponds with the paragraph here. There the words construed were "all articles of every description composed wholly or in chief value of glass, * * * colored * * * in any manner." The only distinction between that merchandise and that we are now considering is that in the present case we are considering *glass bottles*, composed wholly of glass, "ornamented or decorated in any manner." The question in that case was whether articles composed of glass, colored in any manner, included articles which were colored in the process of manufacture. In the present case the question is whether glass bottles "composed wholly * * * of glass, ornamented or decorated in any manner," includes bottles ornamented or decorated in the process of manufacture. We are unable to see room for distinction in the two cases. In that case we held that the coloring need not be imposed by superadded process in order to bring the article within the paragraph. It was said in the opinion:

We can not admit that "every one of the processes enumerated in the provision implies work done upon the glass articles after they have been given their form as such." Such an interpretation would in effect limit the operation of paragraph 98 largely to articles made wholly of glass and would exclude from its provisions those articles in chief value of glass which, after they had taken on their final form, could not in the nature of things be processed as therein described. That is to say, glass bottles, decanters, and vases, cut, engraved, painted, frosted, stained, or etched after having taken on the form of their ultimate use, would be subject to the duty of 60 per cent ad valorem prescribed by the paragraph, but glass chandeliers composed of faceted glass shapes, necessarily cut before and not after they become a part of the article, artistic lamp shades made of bits of glass necessarily stained before they were put in place, fancy lanterns, the glass panels of which were necessarily engraved, etched, or frosted before they were framed, and all other forms or shapes made up chiefly of fitted sections of colored, painted, stained, printed, frosted, cut, engraved, etched, silvered, or gilded glass, and not otherwise specially provided for, would be

dutiable as manufactures of glass or as manufactures of which glass is the component of chief value at 45 per cent ad valorem.

In our opinion neither the wording of the statute nor its legislative history justifies any such distinction or discrimination. In paragraph 98 Congress was not considering articles which had been subjected to the treatment and processes of manufacture therein defined, but articles the glass of which had undergone the operations mentioned. Paragraphs 97 to 109 of the act deal with glass and have for their object the laying of a duty on glass in various forms and conditions. It would seem, therefore, that what interested Congress in passing paragraph 98 was the imposition of a certain duty not on cut, engraved, stained, painted, or colored articles but on articles of cut, engraved, stained, painted, or colored glass.

The case contains a full review of the cases and reaches the conclusion stated. We have not been able to distinguish that case from the present. See also G. A. 6820 (T. D. 29305).

The decision of the board should be *affirmed.*

### DISSENTING OPINION.

DE VRIES, Judge: I am unable to concur in the majority opinion. The goods are well described therein. As I view the case, however, the abstract proposition presented by this appeal is not precisely as stated in the majority opinion, "whether the decoration must be by a superadded process *after the article itself is complete for use*," but is a broader question, whether or not the ornamentation or decoration must be by a *separate* process from that which creates the article. This separate process may be devoted to the creation of a *part* of the article itself, as in the creation of an ornament *added* as a part thereof, or, to effect an ornamentation upon the article or materials therefor, as by etching, etc. In either case two processes (not one) are employed, the one to make the ornamentation and the other to make the article per se. There is sound reason for this distinction in import revenue legislation, which is enacted as well to protect different artisans as to raise revenue. Where an ornamental effect is produced by the single process of molding the glass, the blower alone is the artisan employed, but where the bottle is blown and ornamentation is effected by another separate process two artisans are employed. It is within the principle of this legislation, therefore, that Congress should distinguish between goods produced by two processes and those produced by a single process, however employed, whether upon or in creation of a separate part or *parts* of an article, or upon its materials, or upon the completed article. Congress, if it followed its cardinal purpose, differentiated according to the processes or artisans employed and not according to the resultant appearances. Observance of this congressional purpose did not distinguish between superemployed processes or separately employed processes, but between different processes however employed. The question, therefore, is in my opinion broader than expressed by the majority opinion, "whether the decoration must be by a *superadded*

process *after the article itself is complete for use.*" And this more comprehensive view of the question at issue renders certain of the definitions cited and arguments assigned in the majority opinion without present application.

Therein, as supporting the doctrine that ornamentation or decoration "may * * * be by the *original process* of construction" are quoted definitions as follows:

New Standard Dictionary (1916):

*Ornament.*—1. A *part* or *an* addition that contributes to the beauty or elegance of a thing; * * *.

Webster's New International Dictionary (1916):

*Ornament.*—* * * 2. That which is *added* to embellish or adorn; * * *.

Ornament, as in architecture, is often distinguished as *structural* when it is an *integral part* of what it adorns; or as *applied* when executed on the surface of something structurally complete without it.

I am unable to understand how a *part* of or an *addition* to a thing, or an *integral part* of a thing, all of which ex necessitate must have been separately processed before possessing any identity as such *part* or *addition*, can be deemed as made by the "original process of construction," which made the structure as distinguished from the ornamental *part* thereof or *addition* thereto. If there was an "original" process of construction there must also have been *another* process of construction, and if there are *parts* of an article there must have been separate processes of construction to make each part. In neither case can both be said to be made by the "original" process of construction. In both cases, to complete the article as imported separate or superadded processes must have been employed.

The paragraph here for construction (par. 84, tariff act of 1913) in so far as pertinent reads:

84. Glass bottles * * * composed wholly or in chief value of glass, ornamented or decorated in any manner, or cut, engraved, painted, decorated, ornamented, colored, stained, silvered, gilded, etched, sand blasted, frosted, or printed in any manner, or ground (except such grinding as is necessary for fitting stoppers or for purposes other than ornamentation), and all articles of every description, including bottles and bottle glassware, composed wholly or in chief value of glass blown either in a mold or otherwise; * * *.

Let us note in passing that the words "ornamented or decorated in any manner" are set out separately from and repeated in the later enumerations.

While the majority opinion quotes at length from decisions upon different provisions of other tariff acts expressly predicated thereupon, under the rule of ejusdem generis, or upon commercial understanding, the history and context of this paragraph shows such here entirely irrelevant, in that the language herein is different, is unaccompanied by any influencing associate enumerations and there is no testimony as to commercial designation. Moreover,

*this court has declared that the history and context of the paragraph manifest* the clear intention of Congress to use all the enumerating words therein in their individual, common import.

Language somewhat different in arrangement, though essentially the same in words, was employed in paragraph 90 of the tariff act of 1894, and was the subject of judicial interpretation in Koscherak et al. *v.* United States (98 Fed., 596), a decision of the Circuit Court of Appeals for the Second Circuit (New York) in the year 1899. In that case it was held that the association of the words employed by Congress required that each and all of the therein enumerated processes, "cut, engraved, painted, colored, printed, * * * or otherwise ornamented or decorated," must amount to an ornamentation or decoration before imported articles so processed became dutiable under this language. That decision in varied forms was followed for many years and applied to paragraph 98 of the tariff act of 1909, the predecessor of said paragraph 84, and in all essential particulars the same.

Probably following the suggestion of the case of Thos. McMullen & Co. *v.* United States (123 Fed., 847), Congress in the tariff act of 1909, in order to nullify the effect of the Koscherak case, rearranged these words. That rearranged language was before this court for construction in United States *v.* Wakem & McLaughlin (2 Ct. Cust. Appls., 411; T. D. 32170). The court there reviewed the legislative, departmental, and judicial history of the provision in interpreting the word "colored" as used in paragraph 98 of the tariff act of 1909. At page 419 the result reached by the court was stated in this language:

Informed by the case of McMullen *v.* United States (123 Fed., 847) that the reasoning of the Koscherak case might be avoided by a mere transposition of words, Congress made the transposition and, as evidenced by paragraph 98 of the tariff act of 1909, articles of glass subjected to certain enumerated processes were put upon the same footing as articles of ground glass, that is to say, dutiable by reason of the process and without regard to the incidental effect produced. (Notes on Tariff Revision, pp. 114–117.)

The sole matter decided in that case is couched in the quoted language of the court, and established that Congress by the changes in paragraph 98 of the tariff act of 1909 adopted language requiring a new rule of construction contrary to that of ejusdem generis followed by the court in the Koscherak case.

The obvious purpose of Congress in changing the language of this paragraph being to avoid the effect of the rule of ejusdem generis applied in the Koscherak case, the repetition of the words "ornamented or decorated" was presumptively in furtherance of the same purpose. Congress, therefore, intended that each of the associated words in this paragraph should be accorded its plain, literal import

uninfluenced by the context, *and that "ornamented" and "decorated" might likewise be construed, it set them out separately, amplified by the words "in any manner,"* and free from any associate words.

The legislative history of the act of 1909 shows this duplication of the words "ornamented or decorated" was probably due to a clerical oversight. As the bill appeared in and passed the House the phraseology had been changed to meet the Koscherak case by omitting "or otherwise" and inserting the words "ornamented" and "decorated" among the other enumerations, as they appear in the present and appeared in the act of 1909. The paragraph was amended in the Senate in part by adding the phrase "ornamented or decorated in any manner," the words "ornamented" and "decorated" not having been stricken from the other enumerations. The undoubted purpose of Congress was to have each set of words, at least, uninfluenced by the other set in import.

The intent of Congress as decreed by this court having been to render inapplicable the rule of ejusdem generis to the paragraph it necessarily follows that each of the words and phrases therein were intended by Congress to be applied according to their natural or established individual import, uninfluenced or controlled by the associate words. The dual employment of the words "ornamented" and "decorated" in the paragraph further indicates a congressional purpose that they were not to be controlled in import by the other enumerations. In the determination of this question, therefore, we are not aided, nor are we circumscribed by the decision of this court in United States *v.* Wakem & McLaughlin, supra, or by the import of the associate words under the rule of ejusdem generis. That decision related to the word "colored." This to the words "ornamented or decorated in any manner," a separate collocation of words. We are to determine the natural or established import of these words uninfluenced by that of the other words of the paragraph if we are to observe the obvious intent of Congress as ruled by this court.

What, then, is the natural, literal signification of the words "ornamented or decorated?" Relatively there is no essential difference. The one is more explanatory of the other than otherwise. Lexicographically they are uniformly quoted as synonymous. *They each necessarily imply a superimposed or superadded or separate process.*

New Standard Dictionary (1916):

*Ornament.*—Verb. To embellish with ornaments; adorn; bedeck; as, to ornament a temple.

*Ornament.*—Noun. A part or an addition that contributes to the beauty or elegance of a thing; an embellishment; adornment; * * *.

Contrast—

*Ornamental.*—Adverb. Of the nature of ornament; serving to adorn; as, ornamental stones.

Webster's New International Dictionary (1916):

*Ornament.*—Verb. To adorn, deck, embellish; beautify; as, to ornament a room, or a city.

*Ornament.*—Noun. An article of equipment; an adjunct, useful or decorative, as of clothing, furniture, etc. (2) That which is added to embellish or adorn; that which adds grace or beauty; an embellishment; a decoration; an adornment.

New Standard Dictionary (1916):

*Decorate.*—Verb. To deck or adorn, as with something ornamental; embellish; beautify; as, to decorate a house.

*Decorated.*—Furnished with decorations; ornamented.

Webster's New International Dictionary (1916):

*Decorate.*—Verb. To deck with that which is becoming or ornamental; to adorn; to beautify; to embellish; as, to decorate the person; to decorate an edifice.

Each word presupposes the existence of some article or material which in the one instance is to be made ornate or ornamented or in the other decorated. Such articles are, when thus treated, ornament*ed* or decorat*ed*, by superimposing some effect thereupon or adding some *part* thereto which makes them ornamented or decorated.

On the other hand, articles and materials so made in the process of making become ornaments or ornamental. *Ornamental* articles are those per se ornate or ornaments. *Ornamented* articles are those made so by separate process from their making. Thus, certain feathers are ornamental, not ornamented, though they may be applied to ornament a hat. These bottles undoubtedly are *ornamental*, but not ornament*ed*, so made by the process of their manufacture. They are not ornament*ed* or decorat*ed*, for no superadded process has been applied or part added thereto.

. Congress has repeatedly used these words advisedly. In paragraph 347 it has provided for "*ornamental* feathers suitable for use as millinery *ornaments.*" These are not ornament*ed* feathers; but when made into *ornaments* and placed upon millinery, ornamented hats, bonnets, etc., are produced. So paragraph 335 speaks of braids, etc., suitable for "ornamenting hats." Such braids are *ornamental*, the hats so trimmed ornament*ed*.

The fact that Congress has in various provisions of the act used "ornamental," "ornamented," and "decorated" with frequency bespeaks a deliberate use thereof, which should, in the interests of consistent and uniform interpretation, demand a discriminate application of the words.

It is to be presumed that Congress knew the differentiated use of the different words employed in this enactment and the common understanding thereof, as best attested by lexicographic authority, and so phrased this legislation. The act so witnesses, the presumption of law so declares, and the courts should so interpret.

The words "in any manner" modifying the words "ornamented or decorated" can not in sound reason be held to extend the latter beyond their natural scope. If, therefore, that natural scope confines these words to superadded or separate ornamentation and decoration, the former phrase can not be held to extend that application. They have office, however, in view of the history of the paragraph and its adjudication, marking the purpose of Congress to unmistakably include therewithin all superadded or separate ornamentation and decoration whether or not ejusdem generis with that produced by any of the enumerated processes of the paragraph. These articles in this view while *ornamental* are neither *ornamented* nor *decorated* and, therefore, not within that language of paragraph 84.

Upon the whole it must be said that the proper interpretation of the words "ornamented" and "decorated" as used in this paragraph is, at least, a matter surrounded with extreme doubt, which doubt the importers, who are appellants here, are entitled to have resolved in their favor. Woolworth *v.* United States (1 Ct. Cust. Appls., 120–122; T. D. 31119), United States *v.* Hatters' Fur Exchange (1 Ct. Cust. Appls., 198–202; T. D. 31237), United States *v.* Matagrin (1 Ct. Cust. Appls., 309–312; T. D. 31406), United States *v.* Harper (2 Ct. Cust. Appls., 101–105; T. D. 31655), American Express Co. *v.* United States (3 Ct. Cust. Appls., 475–479; T. D. 33121), United States *v.* American Bead Co. (3 Ct. Cust. Appls., 509–515; T. D. 33166), Newhall et al. *v.* United States (4 Ct. Cust. Appls., 134–137; T. D. 33410), Goat and Sheepskin Import Co. et al. *v.* United States (5 Ct. Cust. Appls., 178–183; T. D. 34254), United States *v.* Wolff & Co. (5 Ct. Cust. Appls., 418–420; T. D. 34943), Wright & Graham et al. *v.* United States (6 Ct. Cust. Appls., 528–530; T. D. 36147), Illfelder & Co. *v.* United States (7 Ct. Cust. Appls., 53–55; T. D. 36311), United States *v.* Britt, Loeffler & Weil (7 Ct. Cust. Appls., 63–66; T. D. 36389), United States *v.* Gavin & Co. (7 Ct. Cust. Appls., 292–295; T. D. 36804), United States *v.* Ducommun Hardware Co. (7 Ct. Cust. Appls., 353–356; T. D. 36904).

For these reasons it would seem that the words "ornamented or decorated" as used in the paragraph herein should be held to mean superadded or separately processed ornamentation and decoration.

The question whether or not these articles are not within paragraph 84 by reason of being "articles of glassware blown in the mold" was not presented or argued and is not considered.