SEMON BACHE & CO. *v.* UNITED STATES (NO. 3171)[1]

United States Court of Customs and Patent Appeals, November 4, 1929

*Jerome G. Clifford* for appellant.

*Charles D. Lawrence,* Assistant Attorney General (*Kenneth G. Osborn* and *Ralph Folks,* special attorneys, of counsel), for the United States.

*Lamb & Lerch* (*J. G. Lerch* of counsel) *amici curiae.*

[Oral argument October 18, 1929, by Mr. Clifford, Mr. Folks, and Mr. Lerch]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GARRETT, Judge, delivered the opinion of the court:

This case involves the proper classification of certain glass imported by appellant. The appraiser reported it to be "rough rolled glass, colored, known as 'Marbrite' glass." The collector classified it under paragraphs 221, 222, and 224 of the Tariff Act of 1922, and assessed duty upon it at 17½ cents per square foot plus 5 per centum. These paragraphs read as follows:

PAR. 221. Fluted, rolled, ribbed, or rough plate glass, or the same containing a wire netting within itself (not including crown, cylinder, or sheet glass), not exceeding three hundred and eighty-four square inches, three-fourths of 1 cent per square foot; all above that, 1½ cents per square foot; and all fluted, rolled, ribbed, or rough plate glass, weighing over one hundred pounds per one hundred square feet, shall pay an additional duty on the excess at the same rates herein imposed: *Provided,* That all of the above plate glass, when ground, smoothed, or otherwise obscured, shall be subject to the same rate of duty as cast polished plate glass unsilvered.

PAR. 222. Cast polished plate glass, finished or unfinished, and unsilvered, not exceeding three hundred and eighty-four square inches, 12½ cents per square foot; above that, and not exceeding seven hundred and twenty square inches, 15 cents per square foot; all above that, 17½ cents per square foot. Plate glass described in this paragraph containing a wire netting within itself, not exceeding three hundred and eighty-four square inches, 15 cents per square foot; above

---

[1] T. D. 43690.

that, and not exceeding seven hundred and twenty square inches, 17½ cents per square foot; all above that, 20 cents per square foot.

PAR. 224. Cast polished plate glass, silvered or unsilvered, and cylinder, crown, and sheet glass, by whatever process made, silvered or unsilvered, polished or unpolished, when bent, ground, obscured, frosted, sanded, enameled, beveled, etched, embossed, engraved, flashed, stained, colored, painted, ornamented, or decorated, shall be subject to a duty of 5 per centum ad valorem in addition to the rates otherwise chargeable thereon.

Appellant made protest against the collector's decision, claiming the merchandise to be dutiable only under that part of paragraph 221 which reads:

Fluted, rolled, ribbed, or rough plate glass * * * [exceeding 384 square inches] 1½ cents per square foot, and * * * weighing over one hundred pounds per one hundred square feet, shall pay an additional duty on the excess at the same rates herein imposed.

The first division of the Customs Court overruled the protest and entered judgment affirming the action of the collector. From the judgment the importer has appealed to this court.

The question is whether the merchandise is so defined in the proviso to paragraph 221, *supra*, as to make it subject to the duty of 17½ cents per square foot provided by paragraph 222, plus the further 5 per centum ad valorem provided under certain conditions by paragraph 224. This question turns upon the meaning to be given the word "obscured" in the proviso. Is the glass obscured in the sense of the statute construed according to the intent of Congress?

An illustrative exhibit in the case consists of a flat piece of glass about four inches square which somewhat resembles porcelain. It appears from the record that this glass is manufactured by pouring the molten materials that compose it upon a table and rolling the mass, while it is in the molten state, to the desired thickness, fluting or ribbing it either by having the requisite grooves or indentations in the roller or in the table upon which the material is poured and rolled. If it is desired to color the glass it may be accomplished by putting the coloring ingredient into the material while the latter is in the molten state, and before it is poured upon the surface where it is to be shaped into the desired sizes and thicknesses. Glass of this character appears to have a variety of uses such as wall coverings, wainscoting, lavatories, table tops, counter tops, linings in refrigerators, facings for soda fountains, etc.

The glass in question is translucent but not transparent. In that sense it may be said to be obscured, but the question is whether that obscuration is such as was intended by the proviso of paragraph 221 to carry the merchandise under paragraphs 222 and 223.

In determining the question, from the record in the case, it seems to be essential to look to four major factors, viz: The testimony relative to commercial designation, the judicial decisions, the administrative

practice, and the legislative history of these paragraphs, and these factors are all somewhat interrelated.

Except as to the rate of duty and sizes paragraph 221 of the act of 1922 appeared in *hæc verba* in five preceding general tariff acts. It was paragraph 114 of the act of 1890, paragraph 93 of the act of 1894, paragraph 103 of the act of 1897, paragraph 101 of the act of 1909 and paragraph 87 of the act of 1913. The language has, therefore, for tariff law, whatever of virtue may. be ascribed to antiquity even if tinctured somewhat with the vice of ambiguity.

The testimony relating to the administrative practice under these acts is not very comprehensive, but it appears to establish the fact that Government examiners passed glass, of the character involved, under at least three of the Tariff Acts, 1909, 1913, and 1922, at the ports of New York and Philadelphia, and justifies the conclusive inference that it was assessed for duty only as appellant insists this should be assessed. So far as the testimony of witnesses is concerned there is no evidence of the practice prior to the latter years of the act of 1909, nor at any ports other than the two mentioned. We should not feel justified in holding that this rather meager testimony of the witnesses (four of them Government examiners called by appellant) alone suffices to establish a line of continuous, general administrative practice which should be controlling, but it is proper, we think, to be considered in connection with other facts.

On March 25, 1896, while the Tariff Act of 1894 was in force, the Board of General Appraisers (now the United States Customs Court) rendered a decision *In re J. Fitzgerald & Co.*, T. D. 17068, G. A. 3449, to which both parties to the instant suit have alluded in their briefs and arguments and upon which both appear to rely as a precedent. The board then found the glass involved in that protest to be "obscured by being etched or enameled" and held it subject to the same duty as "cast polished plate glass, unsilvered (etc.)."

It is not possible to determine definitely from the board's decision (which is all that we have before us in that case) whether the glass there involved was manufactured and carried to its condition as imported in the same manner as that involved here, or whether it was the same nature of glass, but in view of the fact that the board used the words "etched or enameled" to describe the process used in obscuring it, and in view of the subsequent legislative and judicial history, we surmise that it was not the same.

The first judicial interpretation brought to our attention wherein the facts seem to make it directly applicable to the case at bar is the decision of the Board of General Appraisers (now the United States Customs Court) *In re Holbrook Bros.*, T. D. 23320, G. A. 5007, construing paragraph 103 of the Tariff Act of July 24, 1897, and particularly the proviso thereof which was precisely the same as the

language before us. This decision was rendered October 17, 1901. The glass, as described in that opinion, was of exactly the same nature as that involved in the instant case. The board then said:

> The examining officer testified at the hearing that this glass had *previously* been *classified* under paragraph 103 (Act of 1897) as "rolled plate glass"; that this lot was classified and assessed as polished glass under said proviso, *in order to have the question whether or not it is "obscured" determined, and that in so doing the test applied is that "glass you can not see through would be 'obscured'."* [Italics ours.]

General Appraiser De Vries, who wrote the opinion, briefly described other exhibits which were filed in that case, the exact practice followed in the case at bar, these exhibits being pieces of glass falling under the designation of "fluted," "ribbed," "rough," and "rolled," all mentioned in the paragraph then as now in issue, and said:

> In fact, it requires but a casual glance at these samples to learn that "you can not see through" "fluted plate glass," or "rough plate glass," or "rolled plate glass," or "ribbed plate glass," to any appreciable or useful extent; that these are all more or less translucent, and that in the full sense they are not transparent. If this be true, then the proviso to paragraph 103 amends or legislates out of existence the body of that paragraph, for the body levies duty solely on "fluted, rolled, ribbed, or rough plate glass," in some form, at lesser rates, while the proviso levies duty on all "obscured plate glass" at higher rates. If all the former are in fact covered by the latter, the latter repeals the former, Congress inserted an idle paragraph in this act, and should we so hold, violence would be done to that well known principle of construction that effect must be given to all parts of a statute when a rational interpretation thereof by so doing can be adopted.
>
> We believe that the solution of this question is had in the line of some of the testimony introduced, that the word "obscured" as used in this proviso has a commercial meaning in which sense it was used, to wit, that obscured plate glass means obscured by some process applied thereto after its removal from the table or plate on which it is cast, such as by grinding, smoothing, or other similar process. If there is any doubt as to the existence of this commercial denomination, there is none as to the applicability of the principle of legal interpretation of *in pari materia* to the language of the proviso. It states, "*Provided*, That all of the above plate glass, when ground, smoothed, *or otherwise* obscured, shall," etc. Assuming, in conformity with this maxim, that the latitude meaning of the words "or otherwise obscured" is circumscribed by the nature and general character of the processes previously named in the proviso in opposition thereto, to wit "ground, and smoothed," the distinguishing feature of the application of which latter is that they are employed after the cast leaves the plate or table, but one conclusion remains, and that is that Congress, in the language enacted, defined and limited the word "obscured" to those processes applied after the plate glass leaves the cast table and producing effects which are similar to the grinding and smoothing processes.
>
> We, therefore, find that the merchandise in question is rough plate glass and is not obscured within the language of the proviso of paragraph 103 of the said act.

There was no appeal from this decision and apparently it stood as the controlling interpretation of the language now in paragraph

221, Tariff Act of 1922, until the decision of the United States Customs Court of May 26, 1926, in *American Shipping Co.* v. *United States*, T. D. 41608, G. A. 9135, 49 Treas. Dec. 921, to which we shall refer later. This was a period of almost 25 years, and during this period the Tariff Acts of 1909, 1913, and 1922 were passed, each carrying the exact language which had been construed in T. D. 23320, *supra*, and which we are now called upon to construe.

The legislative history of the paragraphs, as related to these respective acts of 1909, 1913, and 1922, shows that the Congresses which enacted them had before them from official sources definite information as to what the judicial construction had been and what the administrative practice thereunder was. This information thus presented to Congress is before us in excerpts from the official documents which it is not deemed necessary to quote at length. The Summary of Tariff Information, 1921, used in the preparation of the bill which became the Tariff Act of 1922, contained the specific statement, "Glass made translucent or opaque *after* the rolling is known as 'obscured' glass." (Italics ours.)

Congress, with both constructive and actual information of the judicial interpretation and administrative practice thereunder before it, reenacted the precise language which had been the subject of such interpretation and practice.

This seems to us to be a very clear demonstration of congressional intent. In addition to this, there is the testimony of a number of witnesses as to commercial designation or the trade meaning given to the word "obscured" as applied to the glass in question. The Customs Court seemed to be of opinion that the testimony was not sufficient to establish commercial designation. We should be very hesitant to reverse a finding of fact made by the trial court where the testimony is as conflicting as it appears to be in the instant case, but in view of the legislative history, the administrative practice, shown by the evidence of those testifying upon that question and appearing in the information from official sources laid before Congress, and the decision *In re Holbrook Bros.*, *supra*, which stood as the law for nearly a quarter of a century, we can not escape the feeling that the testimony of the importer's witnesses is entitled to great weight.

What was said in the *American Shipping Co.* case, T. D. 41608, *supra*, bearing upon the particular issue here involved, was, after all, *obiter dictum*. The board there said that certain facts "*may* bring it (the glass) within paragraphs 221 and 224." (Italics ours.) Paragraph 222 was not mentioned, and the real decision of the case rested upon the fact that the board held the importation there involved not to be classified under either of the paragraphs claimed by the importer, and hence dismissed the protest.

The Government has directed our attention to several cases relating to colored glass, or glass colored, particularly the case of *United States v. Wakem & McLaughlin*, 2 Ct. Cust. Appls. 411, T. D. 32170, wherein glass insulators, to which had been given an amber color by mixing an appropriate coloring matter with the material while it was in a molten state, were held to be covered by paragraph 98, Tariff Act of 1909. We have examined this and the other cases with care, but they do not seem to be directly in point as is the case *In re Holbrook Bros., supra.*

In a supplemental brief the Government also laid before us some excerpts from Tariff Information Surveys, Glass and Glassware, Revised Edition, 1921, under the title "Minor Glass Manufacturing Operations Which Are Specifically Mentioned in the Tariff."

We omit their quotation because of their length, but we have tried to analyze them carefully. Upon the whole, it seems to us that they were not prepared with glass of the kind which is in issue in mind, but rather with reference to glass used in work of an artistic nature.

In any event, we can not think that Congress, had it desired to change paragraph 221 from the interpretation it was then receiving, would have relied upon the data thus supplied to bring about such change through subsequent court decision, when it could itself have made the change by the use of a few plain and simple words. The admittedly ambiguous language of the paragraph running through many tariff acts had received specific judicial interpretation in a decision very properly provoked by the action of the Government official in order that he might know what to do. It might really seem difficult to some to imagine a case where Congressional intent was more vividly manifested by acquiescence and reenactment than it is in this.

It seems not inappropriate to say that the decision *In re Holbrook Bros., supra,* appears to us to be a most reasonable one in its effect. To hold as the Government and *amicus curiae* here insist would have the practical result of subjecting a class of relatively low-priced material, having particular uses, to specific and ad valorem rates of duty admittedly applicable to another class of material three or four times higher in price and having other distinct and entirely different uses. That this is violative of the general policy and practice of Congress in levying customs duties, particularly specific duties, is well known.

Upon the whole record in the case we do not think it was the intent of Congress to have glass of the kind here involved classified under the proviso of paragraph 221 so as to make it subject to the duties provided in paragraphs 222 and 224. We hold it dutiable under the first part of paragraph 221, as claimed by appellant. The judgment of the Customs Court is, therefore, *reversed* and the cause *remanded* for the proceedings necessary under this decision.