UNITED STATES *v.* WOLFF & CO. (No. 1402).[1]

1. ELECTRIC BULBS, FRUIT SHAPED AND COLORED.

These electric-light bulbs, colored, and shaped as fruit, could only be doubtingly classified as fruit, and any doubt should be resolved in favor of the importer. To hold otherwise would result in classifying these importations in all their variety at greatly varying rates of duty, and duties should be uniform upon uniform classes and kinds of goods.

2. MANUFACTURES OF METAL.

The goods were assessed by the board as "articles or wares * * * composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum, or other metal; * * *" under paragraph 199, tariff act of 1909. This assessment was proper. "Manufactures of metal" refers to the material and includes all the component classes of such by whatever distinctive name known.

United States Court of Customs Appeals, November 18, 1914.

APPEAL from Board of United States General Appraisers, Abstract 35162 (T. D. 34307).

[Affirmed.]

*Bert Hanson*, Assistant Attorney General (*Charles E. McNabb*, assistant attorney, of counsel), for the United States.
*Comstock & Washburn* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The official sample of the imported merchandise the subject of this appeal is a small electric-light bulb of pear shape and color to be used in Christmas-tree decoration. While the official sample is thus confined, there is stipulated into the record other similar samples, which, however, are of a class of articles now so common in electric lighting and decoration that the court may well take judicial notice of them. It is proven in the record by testimony of the official customs examiner that "this merchandise is made to imitate about twenty-four varieties of fruits and flowers." The illustrative samples as well as common observation and understanding readily extends this category to berries, mushrooms, nuts, acorns, wreaths, automobiles, canoes, baskets of flowers, festoons, horns of plenty, vases, etc.

The crucial question is, Are these articles artificial or imitation fruit within paragraph 438 of the tariff act of 1909?

These importations are but illustrations of the comparatively new industry, approaching an art, of electrical lighting, taking the form of decoration or shading, adjusted and shaped to suit the situation, condition, and desired effects. On every hand this art finds its daily exposition in one form or another to suit the particular effect

---

[1] Reported in T. D. 34943 (27 Treas. Dec., 537).

sought to be accomplished. It may be for decorating and lighting Christmas trees, wherein harmony of effects as a part of a tree may require the lighting to be representative of fruit or nuts, or it may be in the shading of a room green or rose or other color or some other naturally appropriate effect according to the desired result. In such cases be it noted that in proportion to the other lighting agencies used in the room the colored, frosted, or decorative effect is lost, so that effective service and lighting makes the electric light itself, thus colored or decorated, the primary consideration. Its primary use is that of a lighting agency incidentally frosted, shaded, colored, or decorated, thereby adjusting and conforming the particular lighting scheme and effect desired. Such is equally true of all electrical lighting. So we observe electrical torch effects at the entrance of buildings, electrical flag displays from buildings, electrical baskets, canoes, automobiles, etc., as electrical light table decorations; electrical chariots, horses, bottles, human figures, wearing apparel, as electrical light advertisements, many of which are made beautifully and artistically realistic. These electrical light effects are made up of units of these variously colored or decorated electric-light bulbs, sometimes separately, sometimes collectively, some clear, others frosted, colored, and variously otherwise decorated, as may be appropriate to the particular effect to be produced.

On the other hand, in the same journey we observe stone, wood, and metal figures in the forms of fruit and flower effects, decorative of buildings, furniture, monuments, statues, lawns, etc. If we classify one of these classes of decorative articles as artificial or imitation fruit or flowers all should be so rated for duty.

We do not think it was the intent of Congress to assess duty upon such articles as artificial or imitation fruits and flowers. If that were the purpose of Congress, charged with the making of duties uniform, it would certainly have extended the provisions of paragraph 438 to include at least nuts and mushrooms, all of which representative articles are made, bought, and sold indiscriminately mixed with the artificial pears. Indeed one of the forceful reasons for the court denying that classification is that it would result in classifying these importations at greatly varying rates of duty. That construction of a tariff statute which will render duties uniform upon uniform classes and kinds of goods is greatly to be desired must be assumed to have been the Congressional purpose and should not be denied save for cogent and clearly convincing reasons.

Moreover, an inspection of these samples immediately suggests to the mind an electric-light bulb with lighting as its primary function and intended use. The shape is not uncommon to but of ordinary electric-light bulbs, pear shaped, and there is present in all its practicable and useful completeness the metal base with screw threads

into which is soldered a platinum wire and the other metal structures essential to and as exists in every electric-light bulb. They are electric lights colored as and fruit shaped, complete and ready for use, and as such we think not classifiable as artificial or imitation fruit. To classify them otherwise, at least, must be with many doubtful reservations. This doubt should be resolved in favor of the importer. Goat and Sheepskin Import Co. et al. v. United States (5 Ct. Cust. Appls., 178; T. D. 34254), Woolworth v. United States (1 Ct. Cust. Appls., 120–122; T. D. 31119), United States v. Hatters' Fur Exchange (1 Ct. Cust. Appls., 198–202; T. D. 31237), United States v. Matagrin (1 Ct. Cust. Appls., 309–312; T. D. 31406), United States v. Harper (2 Ct. Cust. Appls., 101–105; T. D. 31655), American Express Co. v. United States (3 Ct. Cust. Appls., 475–479; T. D. 33121), United States v. American Bead Co. (3 Ct. Cust. Appls., 509–515; T. D. 33166), Newhall et al. v. United States (4 Ct. Cust. Appls., 134; T. D. 33410).

The board found metal to be the chief value of the importations and overruled the collector's assessment, as articles in chief value of blown glass are, under paragraph 98 of the tariff act of 1909, directing assessment as "articles or wares * * * composed wholly or in part of iron, steel, lead, copper, nickel, pewter, zinc, gold, silver, platinum, aluminum, or other metal, * * *" under paragraph 199 of said act. The Government contests this finding and contends for the former, upon the theory that while the aggregate metal content of the bulbs constitutes chief value, no single metal therein is such, and that but one of the kinds of component metal materials should be considered in this ascertainment.

The record shows the metal content composed of "metal base," "nickel," "copper," "platinum," and "solder," the proportion of each being stated.

This so-called "catchall" clause of the metal schedule in tariff legislation first appeared in the tariff act of May 2, 1792. If this theory of the Government be accepted in this case it will overturn the accepted and enforced construction of that paragraph and its successors from that date to the present, a period of over one hundred and twenty-two years. It is true that when there is a competing provision of the law which specifically singles out and mentions manufactures of, or a manufacture of, or eo nomine designates one of these or any specific metal, that quantity of such metal in the manufacture can not be weighed in and included as against the particular competing provision. Such is illustrated in G. A. 4839 (T. D. 22725). The doctrine of that case is aptly stated in the syllabus:

In ascertaining the chief component it is improper to group together all the components which are in their character wood when any of them are separately provided for by name.

Where, however, there is no such competing provision the uniform rule has been and is as applied by the Supreme Court of the United States in United States *v.* Klumpp (169 U. S., 209). The question was whether "worsteds" fell within the term "manufactures of wool." The court said:

We think that the words "manufactures of wool," in paragraph 297, had relation *to the raw material* out of which the articles were made, and that as the material of worsted dress goods was wool, such goods fell within the paragraph—

and held worsteds such a material within the term "manufactures of wool." So "manufactures of metal" refers to the material and includes all the component classes of such by whatever distinctive name they may be known as distinguishing them from other kinds of metal. They are all metal. The statute, paragraph 481, refers to "each single component *material*" and not to each single component kind or class of a material. Indeed, did the statute so refer the rule here would be the same, for instead of manufactures of the individual metals composing this article being named in competing paragraphs they are all named specifically in this paragraph so far as their character is by the evidence disclosed, to wit, "nickel," "copper," and "platinum," the residue being provided for as "other metals."

It follows that the decision should be, and is, *affirmed.*