MARSHALL FIELD & Co. *v.* UNITED STATES (No. 4919)[1]

United States Court of Customs and Patent Appeals, January 22, 1958

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for appellant.

*George Cochran Doub,* Assistant Attorney General, *Richard E. FitzGibbon,* Chief, Customs Section (*Richard H. Welsh,* trial attorney, of counsel), for the United States.

[Oral argument December 3, 1957, by Mr. Schwartz and Mr. Welsh]

Before JOHNSON, Chief Judge, and O'CONNELL, WORLEY, RICH, and JACKSON (retired), Associate Judges

RICH, Judge, delivered the opinion of the court:

This is an appeal by the importer from the judgment of the United States Customs Court, First Division (C. D. 1853), one judge dissenting, holding merchandise covered by Protest 230473–K, invoiced as "Iron Works, Metal fruits w/leaves" and classified as "artificial fruits," and Protest 279842–K, invoiced as "Iron pictures of 4 season flowers rusty finish with dull black wooden frame" and classified as "artificial flowers" to be dutiable as classified by the collector at 45% ad valorem under paragraph 1518, Tariff Act of 1930, as modified by T. D. 51898.

Appellant contends that the instant merchandise is not artificial flowers or fruits within the meaning of paragraph 1518 and that said merchandise is properly dutiable at 22½% ad valorem under

[1] C. A. D. 676.

paragraph 397 of the Act, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as articles or wares in chief value of base metal.

It has been stipulated that the involved articles are in chief value of base metal, not plated or in part of gold, silver, or platinum, or colored with gold lacquer.

The applicable portions of the involved statutes are as follows:

Paragraph 1518, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, supplemented by T. D. 51898:

> Artificial or ornamental fruits, vegetables, grasses, grains, leaves, flowers, stems, or parts thereof; and boas, boutonnieres, wreaths, and all articles not specially provided for, composed wholly or in chief value of any of the foregoing:
>
> \*   \*   \*   \*   \*   \*   \*
>
> When composed wholly or in chief value of other materials and not specially provided for:
>
> \*   \*   \*   \*   \*   \*   \* .
>
> Other_____45% ad val.

Paragraph 397, as modified by the General Agreement on Tariffs and Trade, T. D. 51802:

> Articles or wares not specially provided for, whether partly or wholly manufactured:
>
> \*   \*   \*   \*   \*   \*   \*
>
> Composed wholly or in chief value of iron, steel, lead, copper, brass, nickel, pewter, zinc, aluminum, or other metal (not including platinum, gold, or silver), but not plated with platinum, gold, or silver, or colored with gold lacquer:
>
> \*   \*   \*   \*   \*   \*   \*
>
> Other (except slide fasteners and parts thereof)_____22½% ad val.

A sample of the merchandise invoiced as "Iron Works, Metal fruits w/leaves" is in evidence (bearing a "Made in Italy" tag) and consists of a three-dimensional, realistic representation of a stem about 6 inches long to which are affixed four short branches, three of which have representations of leaves on them about 3 inches long, and the fourth has an object about 8 inches in circumference attached thereto which looks to us like a small pomegranate with a segment of outer skin removed, exposing the inner cells. The color of the whole is that of slightly rusty iron.

Though there appears to have been no article available which corresponded to "Iron pictures of 4 season flowers," an illustrative sample of such merchandise is before us (tagged "Made in Japan") which is alleged to be of the same type as the imported articles except that the sample has a round stamped metal frame about a foot in diameter and the imported wares had oblong wooden frames. The framed representation consists of simulated flower stems of roughened wire from which run a number of branches bearing nine leaves and two flowers somewhat like large daisies, the ends of the petals being more or less curled inwardly. The leaves and flowers are formed from light

gauge sheet metal and this sample is painted black, though the invoice calls for "rusty finish."

The only witness was called by the appellant and testified she was an assistant buyer of the appellant by whom she had been employed for about 10½ years in the "art wares and antiques" department which supplies decorative accessories to the public. The witness testified she had been handling merchandise such as is involved herein for about 6 years, buying and selling it; that it is an article that comes from the Orient called "rust pictures"; that articles such as the "4 seasons" pictures come in sets of four; that they are sold singly or in pairs or in the complete set of four and that the flowers represent the four seasons to the Chinese people; that these pictures are used as imported but sometimes people put a velvet backing behind them; *that both types of the involved merchandise are hung on walls;* that she had never seen them in homes but had seen pictures of home interiors which showed them in use.

Appellant has conceded that it is a matter of common knowledge that real flowers are "hung in baskets and in pots from wire works that are extended from walls."

The issue we have to decide is whether the involved merchandise is artificial fruits or flowers, as classified by the collector, which classification was sustained by the Customs Court.

The Customs Court majority opinion commented at length upon three of its own decisions, which had not been appealed, firstly, *Bullocks, Inc.* v. *United States,* 72 Treas. Dec. 914, Abstract 37003, wherein it was held that the "iron pictures" there involved were *not* dutiable as artificial flowers under paragraph 1518 because the articles "had none of the colorings found in natural flowers, nor did they simulate any other flower."

The second case was *O. E. Barrant* v. *United States,* 6 Cust. Ct. 516, Abstract 45233, again involving different kinds of "iron pictures." One type was described as represented by two exhibits, one including two yellow flowers, leaves, and stems and the other some trees and a house of sorts, upon which the court commented, "The work is crudely done and the flower or tree portion of the exhibits is in the flat or two-dimensional, form" and held them *not* to be artificial flowers. However, also involved in the case were other articles which, as described in the opinion, sound like the wares involved here as represented by the "4 seasons" sample, being 10½" x 31" black wooden frames with iron stems, leaves and flowers finished a dull brown color, designed to be hung on walls. These were held to be dutiable as artificial flowers apparently because "The stems, flowers, and leaves simulate the natural in size, shape, form, and in all respects save in color." The court then reasoned that even though natural flowers

would probably not be framed, nevertheless they are often used for wall decoration, which was the same use the iron flower pictures had. This reasoning impresses us as unrealistic from the customs law standpoint. In common understanding natural flowers and pictures have little in common as to use or otherwise. One could as logically argue that a picture of a flower is an artificial flower.

The third case was *Bullocks, Inc.* v. *United States*, 13 Cust. Ct. 62, C. D. 870, which dealt with merchandise similar to some of that in the *Barrant* case, *supra*, namely 5 x 7 inch iron pictures i. e., frames containing stems, branches and flowers all "conventional in design." The court held them to be articles in chief value of artificial flowers under paragraph 1518, apparently on the theory that the "flower portions" of the samples exhibit flower structure in having petals, etc.

The lower court then proceeded to decide that the merchandise in the instant case was dutiable as classified because it "conforms to the test for artificial or ornamental fruits and flowers, as laid down by our appellate court in the *Cochran Co.* and *Coro, Inc.*, cases * * *."

These two cases, separated by thirty-two years and decided under the somewhat different statutes of 1913 and 1930 respectively, are but two of several decided by this court and its predecessor and involving artificial flowers and fruits. Since both parties here, as well as the lower court, argue from the basis of a supposed Cochran-Coro rule, arriving at diametrically opposite conclusions, the supposed rule does not seem to be too helpful. Since the merchandise here involved has never been passed on by this court, a fresh look at the situation would seem to be in order.

In *United States* v. *Dieckerhoff, Raffloer & Co.*, 4 Ct. Cust. Appls. 384 (1913), T. D. 33796, our predecessor court had before it pieces of sewing wax about the size of hickory nuts but shaped and colored to look like various kinds of fruit, "almost all of the articles having the form of fruits * * * so diminutive in size as to bear no actual resemblance to the natural fruits themselves." The question was whether they were "artificial or ornamental * * * fruits" under the 1909 act, paragraph 438 as assessed, or manufactures of wax under paragraph 462. In holding the merchandise was not "artificial fruits" the court said it was led to that conclusion by the *disparity in size* between the wax forms and natural fruits "and the consequent lack of substantial resemblance between the two." It quoted with approval from Abstract 21933 (T. D. 30048) where the Board of General Appraisers had held pincushions of cotton and sawdust which were "crude and highly colored imitations of apples, peaches, pears, and like fruit" were not artificial fruit because they did not so "simulate the natural in form, color, and outline to such an extent that they might readily be taken for the fruit they represent."

In *United States* v. *Wolff & Co.*, 5 Ct. Cust. Appls. 418 (1914), T. D. 34943, the Court of Customs Appeals was concerned with whether Christmas tree electric bulbs made to imitate fruits and flowers were artificial fruit under the same paragraph with which the *Dieckerhoff* case was concerned. It held they were not, pointing out that their chief use was as a lighting agency and that inspection "immediately suggests to the mind an electric-light bulb with lighting as its primary function and intended use." After pointing out that such bulbs were also made to imitate many things beside fruits and flowers, such as torches, canoes and automobiles, it said that to classify some as artificial fruit would result in varying rates of duty on substantially the same article, contrary to the assumption that Congress intends duties to be uniform upon uniform classes and kinds of goods.

In *Cochran Co. et al.* v. *United States*, 10 Ct. Cust. Appls. 62 (1920), T. D. 38336, the statute involved was paragraph 347 of the tariff act of 1913 which named:

Artificial *and* ornamental fruits, grains, leaves, flowers and stems or parts thereof * * * and all articles * * * composed wholly or in chief value of any of the * * * flowers, leaves, or other material herein mentioned * * *. (Italics ours.)

Involved were (1) a spray of artificial leaves on a stem upon which was set one brown and three blue oblate spheroids composed of straw; (2) a cluster made of black straw wound into the form of berries or grapes and set on a black straw leaf attached to a stem of black straw and metal; and (3) a spray of leaves bearing a rose all made of black straw sewed to a woven fabric. All these were held to be properly assessed as artificial flowers and leaves. In so deciding the court made the following much-quoted statement, referring to the exhibits illustrating items (2) and (3), *supra*, making two points we have numbered in brackets:

■ It may be that neither exhibit truly represents any natural flower, fruit, leaf, or stem. Nevertheless, both come within the tariff designation of "artificial and ornamental fruits, grains, leaves, flowers, and stems," inasmuch as they are articles which simulate the natural fruit, flower, leaf, or stem in its physical characteristics and appearance sufficiently to cause them in common understanding to be regarded as leaves, stems, flowers, or fruits produced not by nature, but by the hand of man, and [2] which at the same time are appropriate and suitable to be used for those purposes of ornamentation to which the natural products may be temporarily devoted.

On the day the *Cochran* case was decided the same court handed down an opinion in *United States* v. *Darling*, 10 Ct. Cust. Appls. 57 (1920), T. D. 38334, involving the classification of ivory carved in the form of roses, pansies, daisies and so forth made up into brooches, pins and pendants. They were assessed as jewelry but a protest to this was sustained and they were held to be manufactures in chief value of ivory. The Government appealed, contending for the original classi-

fication or, alternatively, that the goods were artificial flowers. Judge Montgomery said it had been settled by an earlier case that the goods were not jewelry and on the other contention said:

> My brethren are of the opinion that these articles are not properly to be designated as artificial flowers within the principle laid down in the opinion of my brother Smith in the case of *Cochran et al.* v. *United States* * * *, decided concurrently herewith.

He then said that although he was in doubt he would not insist on a contrary view, the full court thus holding (with one judge in doubt) that they were not artificial flowers. The *Cochran* case must therefore be construed in the light of the fact that the same judges at the same time felt that a black straw spray of leaves with a rose, for example, was an "artificial and ornamental" flower and a carved ivory rose was not. It seems to leave the issue to be decided on the basis of an appraisal of how "common understanding" would class the articles.

In *Veit, Son & Co.* v. *United States*, 11 Ct. Cust. Appls. 81 (1921), T. D. 38732, the same court adopted the above-quoted principle of the *Cochran* case, applying it to three samples of raffia articles classified by the collector as artificial flowers under paragraph 347 of the 1913 act. The court reversed as to two of the samples of which it said "they are not such as in any degree, in common understanding, simulate a natural flower in physical characteristics and appearance sufficiently to cause them to be regarded as a flower in any sense, nor do they simulate any natural leaf." The reports contain no description of the articles, but one of the raffia articles was held to be an artificial flower "within the rule of the Cochran case."

In *United States* v. *U-Neak Dinner Favors (Inc.)*, 11 Ct. Cust. Appls. 391 (1922), T. D. 39316, plaster of Paris pumpkins, lemons, sprouting onions and ears of corn having a pumpkin-shaped jack-o'-lantern at the base were classified as artificial fruits under the 1913 act (which, as quoted above, specifies "artificial *and* ornamental fruits," etc.). The protest was sustained by the lower tribunal and, in affirming, the appellate court pointed out that the wares were candy containers. It said that while they were pleasing in the sense of being odd they were *not ornamental;* that since real onions, ears of corn, pumpkins and lemons "are not ornamental fruits, it is evident that crude plaster of Paris imitations of them are in no better case." It affirmed on the ground the goods were not ornamental, a clear indication that the court was of the view that the conjunctive expression in the 1913 act required compliance with both of the terms "artificial" and "ornamental." This has a bearing on the so-called rule of the *Cochran* case, above quoted, and its proper construction today, because the 1930 Act uses a different expression, viz: "artificial *or*

ornamental." In using "and," the 1913 act was unusual, as the acts of 1909 and 1922 use "or" as does the present law. This difference, however, should be remembered in applying cases decided under the 1913 law. It is a very likely explanation of why the court in the passage above quoted in the discussion of the *Cochran* case included the last clause requiring the goods to be suitable for the ornamental purposes "to which the natural products may be temporarily devoted." This is the clause we marked ■.

On the same day with the *U-Neak* case, the court decided *United States* v. *Sears, Roebuck & Co.*, 11 Ct. Cust. Appls. 412, (1922), T. D. 39323. This case too deemed the "rule" of the *Cochran* case to be controlling and held that papier-mâché candy containers in the form of apples, pears, peaches and other fruits, crudely but appropriately colored and of natural fruit size, were *not* "artificial and ornamental fruits" under paragraph 347 of the 1913 act, as the collector had classified them. The issue was decided "according to the common or ordinary use of the words by people in general." The reasons given for the decision were "that their physical characteristics and appearance would not cause them in common understanding and speech to be regarded and described as artificial fruits or as appropriate and suitable to be used for those purposes of decoration or ornamentation to which natural fruits may be temporarily devoted. *For to the common understanding and in ordinary speech the articles would * * * be considered and described as merely fancy boxes* for exclusive use as containers of candy." (Emphasis ours.)

In *Shallus Co.* v. *United States*, 13 Ct. Cust. Appls. 87, T. D. 40937, (1925), under the 1922 Tariff Act, naming artificial *or* ornamental fruits, etc., articles made of soap, covered with a thin layer of paraffin and "crudely" resembling oranges, pears, apples, lemons, etc., were held not to be artificial fruit on the authority of the *Sears, Roebuck* case, *supra*. The court also noted the change in the statutory language from "and" to "or," and said that that change did not justify the classification of the soap as artificial fruit. The decision appears to have been further influenced by the clause "not specially provided for" in the artificial fruit paragraph and the existence of a specific provision for soap in paragraph 82.

We come, finally to the other case relied upon by all concerned, including the dissenting judge below, in combination with the *Cochran* case, to wit *Coro, Inc.* v. *United States*, 39 C. C. P. A. (Customs) 154, C. A. D. 478, (1952). There too both parties relied in their briefs on the *Cochran* case in arguing whether certain costume jewelry was or was not "in chief value of artificial flowers." The merchandise, which the evidence showed to be used as a brooch attached to women's

dresses, coats and hats as ornaments, was described as composed of metal and glass and consisting of three layers of metal in trefoil form superimposed on one another in successively smaller diameters, the trefoil portions being black with bright silver-like edging. In the center of the outer face of this brooch a short metal post carried a piece of glass having facets like those of a round cut diamond. The court then quoted the paragraph from the *Cochran* case which we have quoted above in our discussion of it, considered it with some care and applied its thinking to the case before it as follows:

> In our opinion, even though it may be said that the involved articles are conventionally flower-like, they are neither appropriate nor suitable for the well-known purposes of ornamentation to which artificial [that *natural* was intended is clear from the context] flowers may be temporarily devoted. They are simply costume jewelry in the form of brooches which, omitting the pin portion, may be said to look like the form of some kind of a flower. It would tax the imagination to picture such articles as being artificial flowers in accordance with common understanding.

The court held, of course, that the articles were not artificial flowers, in chief value or otherwise, and quite clearly did so on two grounds.

The first of these grounds was that they were not "artificial flowers" because they were not suitable for the purposes *of ornamentation* to which natural flowers may be temporarily devoted (temporarily, we presume, only because natural flowers are evanescent). We have already explained that this point, based on the clause of the paragraph quoted above from the *Cochran* case and marked [2], quite likely arose from the "artificial *and* ornamental" wording of the 1913 act. If so, it lacks this underpinning today because the corresponding statute is now disjunctive. But it would seem to make little practical difference because an *artificial* flower, by definition, is one which is suited to the uses to which natural flowers may be put, and the chief use of real flowers is to ornament. Consider the definitions of "artificial" as given in Webster's New International Dictionary (2d Ed.):

> 1.a *artificial*—Made or contrived by art; produced or modified by human skill and labor, often as an imitation of something found in nature;—opposed to *natural;* as, *artificial* heat or light, gems, salts, minerals, fountains, flowers, breeding.
> b Made, esp. by a chemical process, to resemble a raw material, or something derived from it; synthetic; as, *artificial* cotton or wool.

Thus an artificial flower can of course be used to ornament but it does not follow, in logic, that because a thing can be used to ornament it is necessarily an artificial flower, even though it has some other flower-like characteristics.

The second ground of decision in the *Coro* case was emphatically stated in the words: "It would tax the imagination to picture such articles as being artificial flowers *in accordance with common understanding.*" Our added emphasis is for the purpose of pointing up the gist of the entire situation.

The *Cochran* case does not really lay down any "rule" or "test" different from the basic rule that common understanding of the meaning of the words controls. Though more verbose, an analysis of the quoted paragraph will show that when boiled down all the Court of Customs Appeals there said was that *a man-made article is an artificial flower if it looks enough like a flower (real or imaginary) to be regarded as an artificial flower "in common understanding".* And herein, we believe, resides the explanation of why the *Cochran* case can be and is repeatedly relied upon by both parties to a litigation; its supposed "rule" settles nothing because it begs the question. As we suggested above, the *Cochran* case leaves the decision as to any given article to be made by the court on the basis of the common meaning of the term artificial flowers, or fruits, or whatever may be involved, which is perhaps as it should be for it is not the business of this court to rewrite the tariff act but rather to apply it in specific situations. A close look at the *Cochran* case opinion will show that all the court was doing was to say whether or not the straw objects before it were or were not artificial fruits, leaves, flowers and stems, though admittedly they looked like no real plant to the extent of deceiving anyone into thinking they were real. The court decided the issues, as it has in every other case we have reviewed, *on the basis of its own judgment* as to whether the merchandise before it was or was not *in common understanding* an artificial fruit, leaf or flower. Thus, on a case by case basis, the court construes and sets the limits of the statutory language by a process of inclusion and exclusion. It is by this process that we determine "common meaning," which it is our province to do and as to which we are bound by no evidence. *United States* v. *Felsenthal & Co.,* 16 Ct. Cust. Appls. 15, T. D. 42713; *United States* v. *May Department Stores Co.,* 16 Ct. Cust. Appls. 353, T. D. 43090; *United States* v. *North American Mercantile Co.,* 17 C. C. P. A. (Customs) 378, T. D. 43820; *United States* v. *H. A. Caesar & Co.,* 18 C. C. P. A. (Customs) 106, T. D. 44067; *California Fruit Wrapping Mills (Inc.)* v. *United States,* 19 C. C. P. A. (Customs) 381, 385; *Hummel Chemical Co.* v. *United States,* 29 C. C. P. A. (Customs) 178, C. A. D. 189; and see also *American Bead Co.* v. *United States,* 7 Ct. Cust. Appls. 18, 21, T. D. 36259, and decisions of the United States Supreme Court there cited.

It will be seen from the cases above mentioned that many different factors were taken into consideration in determining whether the articles in each case were artificial fruits or flowers. These factors were not limited to the two questions of closeness of simulation and suitability to the ornamental uses of real flowers referred to in the *Cochran* opinion but included others such as size, primary function, other recognized names, uses and applicable tariff act provisions, and ordinary common sense. The situation must be viewed as a whole.

The tariff laws are drafted in the language of commerce which is presumptively that in common use and no testimony as to common meaning is required to make out a case because such testimony, if offered, is merely advisory to the court. *Hummel Chemical Co.* v. *United States, supra.* We have before us samples of the merchandise which, in a case of this character, are most potent witnesses, *United States* v. *The Halle Bros. Co.*, 20 C. C. P. A. (Customs) 219, T. D. 45995; *United States* v. *Fred. Gretsch Mfg. Co., Inc.*, 28 C. C. P. A. (Customs) 26, C. A. D. 120.

We hold, on the ample evidence before us, that the metal fruit with leaves exemplified by Exhibit 1 is not in the category of "artificial fruits," as classified, because in our judgment it is properly described as a wrought iron wall decoration using a fruit and leaf motif. We believe that the common understanding of the term "artificial fruit" does not encompass such iron objects, particularly when their overall color is that of oxidized iron so as to give the observer the distinct and immediate impression that it is a work of wrought iron, to be used where it is desired to add a touch of wrought iron to the interior décor, not where one would normally use real fruit or close imitations thereof in form and color.

The "iron pictures" exemplified by Exhibit 2 we hold are not in the category of "artificial flowers" wherein they were classified. They are a species of three-dimensional monochrome pictorial compositions mounted in frames and are obviously to be used as framed pictures are used, hanging on a wall as testified. This is not the use to which real flowers are normally put, nor the close imitations thereof which might be mistaken therefor.

As in the earlier cases which we have discussed, we do not attempt to redefine any of the tariff act terms involved except as they may be more definite in the future by reason of our holding on the issues here presented to us.

For the reasons stated, the judgment of the Customs Court is *reversed.*

JACKSON, J., Retired, recalled to participate.