Slip Op. 05-95

United States Court of International Trade

```
_____
                                  :
CONAIR CORPORATION,               :
                                  :      Before: Richard K. Eaton,
        PLAINTIFF,                :              Judge
                                  :
        v.                        :      Court No. 02-00383
                                  :
UNITED STATES,                    :
                                  :
        DEFENDANT                 :
_____:
```

OPINION

[Plaintiff's motion for summary judgment granted; Defendant's cross-motion for summary judgment denied]

August 12, 2005

Neville Peterson LLP (Michael K. Tomenga, Catherine Chess Chen, George W. Thompson and Lawrence J. Bogard) for Plaintiff Conair Corporation.

Peter D. Keisler, Assistant Attorney General; Barbara S. Williams, Attorney in Charge, International Trade Field Office (James A. Curley); Yelena Slepak, of counsel, Office of Assistant Chief Counsel for United States Bureau of Customs and Border Protection, for Defendant United States.

Eaton, Judge: Before the court are cross-motions for summary judgment pursuant to USCIT R. 56. By its motion, plaintiff Conair Corporation ("Conair") challenges the classification of its tabletop fountains by the United States Customs Service ("Customs")[1] under the Harmonized Tariff Schedule

---

[1] Effective March 1, 2003, the United States Customs Service was renamed the United States Bureau of Customs and Border Protection. See Reorganization Plan Modification for the Dep't of Homeland Security, H.R. Doc. 108-32 at 4 (2003).

of the United States (2000) ("HTSUS").  Customs classified the

tabletop fountains ("Serenity Ponds") under HTSUS subheading

3926.40.00 as "Other articles of plastics and articles of other

materials of headings 3901 to 3914 . . . Statuettes and other

ornamental articles," subject to a tariff rate of 5.3 percent *ad

valorem*.  Conair argues that the merchandise is properly

classifiable under HTSUS subheading 8413.70.2004[2] as "Pumps for

liquids, whether or not fitted with a measuring device; liquid

elevators; part thereof; . . . Other centrifugal pumps . . .

Other . . . Submersible pumps," subject to no tariff.  By its

cross-motion, defendant, the United States ("Government"), on

behalf of Customs, maintains that the merchandise is properly

classified pursuant to HTSUS subheading 3926.40.00 and asks the

court to deny Conair's motion and dismiss this action.  The court

has jurisdiction pursuant to 28 U.S.C. § 1581(a) (2000).  For the

reasons set forth below, the court grants Conair's motion for

summary judgment and denies that of the United States.

_____

[2]     Conair, in its briefs, claims the Serenity Ponds are
properly classified under HTSUS subheading 8413.70.2040.  The
court, however, believes that Conair intended to cite to
subheading 8413.70.2004, which encompasses "[s]ubmersible pumps."
*See Conair Corp. v. United States,* Court No. 02-00383 at 2 (May
27, 2002) (summons identifying "protest claim" as
"8413.70.2004."); *Conair Corp. v. United States*, Court No. 02-
00383 at 7-8 (Aug. 12, 2002) (complaint stating "Plaintiff
requests [that] . . . the U.S. Customs Service . . . reliquidate
the subject entries under subheading 8413.70.2004 of the
HTSUS . . . .").

BACKGROUND

Plaintiff is an importer of seven different models of Serenity Ponds.  On November 4, 1999, it submitted a letter to the Customs National Commodity Specialist Division ("NCSD") in New York requesting a tariff classification ruling for a specific model of these tabletop fountains.  Ultimately the NCSD classified the merchandise under HTSUS subheading 3926.40.00. *See generally New York Letter NY F83276* (March 15, 2000).

On July 10, 2000, Conair filed a Request for Reconsideration of Customs' classification, asserting that the Serenity Ponds were properly classifiable under HTSUS subheading 8413.70.20. Customs denied this request.  *See Headquarters Ruling Letter HQ 964361* (August 6, 2001) ("HQ 964361"); *see also id*. at 5 ("After a careful consideration of this issue, we determine that the calming pond is essentially a plastic decorative article. Accordingly, based upon our determination that the essential character of the calming pond is as a [sic] article of plastic, we find that it is provided for in heading 3926 . . . .").  Thereafter, Conair timely filed protests challenging Customs' classification of the subject merchandise.  Customs denied each of the protests and Conair commenced the present action.

STANDARD OF REVIEW

This court may resolve a classification issue by means of summary judgment. *See Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1365 (Fed. Cir. 1998). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . ." USCIT R. 56(c). Summary judgment of a classification issue "is appropriate when there is no genuine dispute as to the underlying factual issue of exactly what the merchandise is." *Bausch & Lomb*, 148 F.3d at 1365 (citing *Nissho Iwai Am. Corp. v. United States*, 143 F.3d 1470, 1472 (Fed. Cir. 1998); *IKO Indus., Ltd. v. United States*, 105 F.3d 624, 626–27 (Fed. Cir. 1997); *Rollerblade, Inc. v. United States*, 112 F.3d 481, 483 (Fed. Cir. 1997); *Sports Graphics, Inc. v. United States*, 24 F.3d 1390, 1391 (Fed. Cir. 1994)). Where jurisdiction is predicated on 28 U.S.C. § 1581(a), Customs' interpretation of an HTSUS tariff term, a question of law, is subject to *de novo* review. *See* 28 U.S.C. § 2640(a); *see also E.T. Horn Co. v. United States*, 27 CIT __, __, Slip Op. 03-20 at 4 (Feb. 27, 2003) (quoting *Clarendon Mktg., Inc. v. United States*, 144 F.3d 1464, 1466-67 (Fed. Cir. 1998)). The court employs a two-step process when analyzing a classification issue: "first, construe the relevant classification headings; and second, determine under

which of the properly construed tariff terms the merchandise at

issue falls." *Bausch & Lomb*, 148 F.3d at 1365 (citing *Universal*

*Elecs. Inc. v. United States*, 112 F.3d 488, 491 (Fed. Cir.

1997)).


DISCUSSION

Here, "there is no genuine dispute as to the underlying

factual issue of exactly what the merchandise is." *Bausch &*

*Lomb*, 148 F.3d at 1365.  The parties agree that the Serenity

Ponds: (A) "are designed to 'create a tranquil atmosphere at home

or in the office,'" Def.'s Resp. to Pl.'s Statement of Material

Facts ("Def.'s Resp. Facts") para. 1; (B) are intended to appeal

to the consumer's visual and auditory senses, Def.'s Statement of

Material Facts Not in Dispute ("Def.'s Mat. Facts") para. 2;

Pl.'s Resp. to Def.'s Statement of Material Facts Not in Dispute

("Pl.'s Resp. Facts") para. 2; and (C) are "comprised of: (1) a

water reservoir or base; (2) an electric, submersible,

centrifugal pump that sits in the base; (3) plastic tubing; (4) a

power cord; and (5) various objects, such as simulated rocks,

simulated bamboo, natural polished stones, through which and/or

over which pumped water flows."[3]  Statement of Material Facts Not

---

[3]      The parties also agree that the "bowl-shaped base" for
each of the fountains is made out of plastic.  *See* Statement of
Material Facts Not in Dispute ("Pl.'s Mat. Facts") para. 2;
Def.'s Resp. Facts para. 2 (stating that the Government "[a]dmits
                                                    (continued...)

in Dispute ("Pl.'s Mat. Facts") para. 1; Def.'s Resp. Facts para. 1.

Merchandise entering the United States is classified under the HTSUS by Customs. "The legal text of the [HTSUS] consists of the General Rules of Interpretation; the Additional U.S. Rules of Interpretation; the General Notes; Sections I through XXII, inclusive (encompassing chapters 1-99, through the 8-digit level, article descriptions and tariff and other treatment accorded thereto); the Chemical Appendix; the Pharmaceutical Appendix; and the Intermediate Chemicals for Dyes Appendix." United States International Trade Commission, *Preface to the 12th Edition HTSUS*, 2 (2000). Classification under the HTSUS is governed by the General Rules of Interpretation ("GRI"). *See Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999); *Orlando Food Corp. v. United States*, 140 F.3d 1437, 1439 (Fed. Cir. 1998).

---

[3](...continued)
the remaining allegations of this paragraph to the extent supported by the product literature in Plaintiff's Exhibit 1."); *see also* Memo of Points and Authorities in Supp. of Pl.'s Rule 56 Mot. For Summ. J. ("Pl.'s Memo."), Ex. 1 (containing Serenity Pond Advertising Literature and Instruction Booklet). The parties further agree that, with the exception of the wind chime assembly, the various sculptures—such as the simulated rocks and the simulated bamboo—are made of plastic. *See* Pl.'s Mat. Facts; Pl.'s Memo., Ex. 1; Def.'s Resp. Facts.

In a classification dispute, the court begins its analysis with GRI 1.[4]  If the proper classification cannot be determined by reference to GRI 1, it becomes necessary to refer to the succeeding GRIs in numerical order.  *See N. Am. Processing Co. v. United States*, 236 F.3d 695, 698 (Fed. Cir. 2001) (citation omitted); *Carl Zeiss*, 195 F.3d at 1379 (citing *Baxter Healthcare Corp. of P.R. v. United States*, 182 F.3d 1333, 1337 (Fed. Cir. 1999)).  If, however, the proper classification is determined by reference to GRI 1, the court may not consider any subsequent GRI.  *Mita Copystar Am. v. United States*, 160 F.3d 710, 712 (Fed. Cir. 1998).

In determining the proper classification, "[t]he Court may also refer to the Explanatory Notes, which constitute the World Customs Organization's official interpretation of the HTSUS." *Bauer Nike Hockey USA, Inc. v. United States*, 27 CIT __, __, 305 F. Supp. 2d 1345, 1351 (2003) (citing *Baxter Healthcare Corp. of P.R. v. United States*, 22 CIT 82, 89 n.4, 998 F. Supp. 1133, 1140 n.4 (1998)).  The Explanatory Notes, although not legally binding, are "intended to clarify the scope of HTSUS subheadings and to offer guidance in interpreting [the] subheadings."

---

[4]    GRI 1 states: "The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes . . . ."  *Id.*

*Rollerblade, Inc.*, 112 F.3d at 486 n.3 (citation omitted).
Therefore, "close textual analysis of the language of the
headings and the accompanying explanatory notes" is required in
order to determine the proper classification of merchandise.
*Bauer Nike Hockey*, 27 CIT at __, 305 F. Supp. 2d at 1351.

### A.    Application of the General Rules of Interpretation

### 1.    General Rule of Interpretation 1

Conair argues that the "subject tabletop fountains operate
by pumping liquid water, which produces the sound of flowing
water."  Memo. of Points and Authorities in Supp. of Pl.'s Rule
56 Mot. for Summ. J. ("Pl.'s Memo.") at 16.  This movement of
water is made possible "solely by means of a pump for liquids."
*Id.* at 17.  Based on these statements, Conair contends that the
Serenity Ponds are "*prima facie* classifiable within HTSUS Heading
8413 by application of GRI 1 . . . ."  *Id.* at 16.  Heading 8413
encompasses "Pumps for liquids, whether or not fitted with a
measuring device; liquid elevators; part thereof."  In making its
claim, Conair insists that HTSUS Heading 8413 is an *eo nomine*[5]

---

[5]    An *eo nomine* designation is "one which describes [a]
commodity by a specific name, usually one well known to
commerce."  *Casio, Inc. v United States*, 73 F.3d 1095, 1097 (Fed.
Cir. 1996) (alteration in original) (quoting Black's Law
Dictionary 535 (6th ed. 1990)); *see also Chevron Chem. Co. v.
United States*, 23 CIT 500, 505, 59 F. Supp. 2d 1361, 1367 (1999)
(stating that "[a]n *eo nomine* provision that names an article
without terms of limitation, absent evidence of a contrary
(continued...)

provision that "covers an article in all its forms."  Pl.'s Memo. at 17 (citations omitted).  Thus, for Conair, even though the Serenity Ponds consist of more parts than merely the pump, "the subject merchandise answers only to the terms of Heading 8413 and is *prima facie*, described therein."  *Id.* at 18.

Conair further maintains that since the Serenity Ponds are *prima facie* classifiable under HTSUS Heading 8413, the Chapter Notes preclude them from being classified under Customs' chosen Heading 3926.  This is because note 2(p) to Chapter 39 HTSUS states that Chapter 39 "does not cover: . . . Articles of Section XVI (machines and mechanical or electrical appliances)."  *Id*. Section XVI includes Chapter 84.  Therefore, Conair urges the conclusion that, since the Serenity Ponds are *prima facie* classifiable under Chapter 84, the Chapter Notes provide that the Serenity Ponds may not be classified under Chapter 39.

The Government faults Conair's assertion that classification of the Serenity Ponds is possible under GRI 1.  "The pump, which is a component of the tabletop fountain, is *prima facie* classifiable under heading 8413. . . .  The plastic articles (*i.e.*, simulated plastic rock) and polished stones, which also

---

[5](...continued)
legislative intent, is deemed to include all forms of the article.") (citation omitted).

are components of the fountain, are not 'pumps for

liquids . . . ,' do not function as pumps for liquids, and thus

are not described in heading 8413." Def.'s Br. in Rep. to Pl.'s

Opp'n to Def.'s Mot. for Summ. J. ("Def.'s Rep.") at 2.

Therefore, according to the Government, because each of the

components is not *prima facie* classifiable under Heading 8413,

classification cannot be determined pursuant to GRI 1. *See id*.

at 2-3.

The court finds that, although Conair is correct in its

assertion that the pumps are *prima facie* classifiable under HTSUS

Heading 8413, it is incorrect in claiming that classification may

be resolved by reliance upon GRI 1. Each Serenity Pond consists

of a pump, a decorative sculpture made of plastic (*e.g.* simulated

rocks or bamboo),[6] and natural stones.[7] While the pumps

themselves are properly classified under Heading 8413, the

---

[6]     It should be noted that one of the Serenity Pond models features a wind chime display made of metal and plastic parts.

[7]     The parties, in their briefs, assert contradictory characterizations of the stones included with the Serenity Ponds. The plaintiff characterizes the stones as accessories that are not necessary to the operation of the pond. The Government, however, asserts that the stones are adapted to the ponds and are, therefore, not accessories, but rather additional components of the fountains. In the alternative, the Government asserts that the stones are put up for sale as a "set" as that term is provided for in GRI 3(a) and (b). Because the court finds that the Serenity Ponds are composite articles whose essential character is established by their pumps, a discussion of the parties' characterizations of the stones is not warranted.

remaining parts of the Serenity Ponds are appropriately

classified elsewhere.  Because each component, when considered

individually, is *prima facie* classifiable under a different HTSUS

heading, reliance on GRI 1 is inappropriate.  Therefore, it

becomes necessary to refer to the succeeding GRIs in numerical

order.  *See Pillowtex Corp. v. United States*, 171 F.3d 1370, 1375

(1999) ("Having exhausted the headings and the notes, pursuant to

GRI 1, we may now consider the next GRI provision, GRI 2.").[8]


*2.   General Rules of Interpretation 2 and 3*

The Government argues that, upon reference to the GRIs in

numerical order, the court should conclude that the Serenity

Ponds must be classified under GRI 3.  The Government further

contends that "[s]ince [the] fountains therefore are composite

---

[8]      Plaintiff's reliance on *JVC Co. of America, Division of U.S. JVC Corp v. United States*, 23 CIT 523, 62 F. Supp. 2d 1132 (1999), *aff'd* 234 F.3d 1348 (Fed. Cir. 2000) as support for its contention that GRI 1 may be used to classify composite goods is misplaced.  In *JVC*, the Court of Appeals for the Federal Circuit held that the term "television cameras" was broad enough to allow for classification of camcorders, which consisted of a camera and a video cassette recorder.  The situation in *JVC* is distinguishable from the present case because the definition of television cameras referenced by the Court stated that "[t]he units often have built-in . . . video cassette recorders . . . for completely self-contained operation . . . ."  *JVC Co. of Am., Div. of U.S. JVC Corp., v. United States*, 234 F.3d 1348, 1353 (Fed. Cir. 2000) (citing 18 McGraw-Hill Encyclopedia of Science and Technology 216 (8th Ed. 1997)).  The Court also noted that the Explanatory Notes included cameras with built in video recorders.  *Id*. at 1352.  The plaintiff in the present case has not produced a definition of a pump that includes sculptural plastic components.

goods, and each component is classifiable under a different heading, the imported fountains cannot be classified according to GRI 1, and it is necessary to look to GRI 2 and 3 to determine classification."  Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Its Cross-Mot. for Summ. J. ("Def.'s Memo.") at 4-5; *see* GRI 2,[9] 3.[10]  Finally, the Government states that "GRI 2,

---

[9]     GRI 2 provides that:

(a) Any reference in a heading to an article shall be taken to include a reference to that article incomplete or unfinished provided that, as entered, the incomplete or unfinished article has the essential character of the complete or finished article.  It shall also include a reference to that article complete or finished (or falling to be classified as complete or finished by virtue of this rule), entered unassembled or disassembled [; and] (b) Any reference in a heading to a material or substance shall be taken to include a reference to mixtures or combinations of that material or substance with other materials or substances.  Any reference to goods of a given material or substance shall be taken to include a reference to goods consisting wholly or partly of such material or substance.  The classification of goods consisting of more than one material or substance shall be according to the principles of rule 3.

[10]    GRI 3 provides that:

When, by application of rule 2(b) or for any other reason, goods are, *prima facie*, classifiable under two or more headings, classification shall be effected as follows: (a) The heading which provides the most specific description shall be preferred to headings providing a more general description.  However, when two or more headings each refer to part only of the materials or substances contained in mixed or composite goods or to part only of the items in a set put up for retail sale, those headings are to be regarded as equally specific in relation to those goods, even if

(continued...)

insofar as relevant here, provides in subsection (b) that

classification of goods consisting of more than one material or

substance must be determined according to the principles of GRI

3." *Id.* at 5.  The court agrees with this analysis.

The Government is also correct in its contention that,

contrary to one of Conair's alternative arguments, reference to

the first sentence of GRI 3(a) does not end the inquiry.  That

sentence, incorporating the concept of "relative specificity," is

inapplicable in the present case because it comes into play when

a good, as a whole, is *prima facie* classifiable under two or more

headings.  *Bauer Nike Hockey USA, Inc. v. United States*, 393 F.3d

1246, 1252 (Fed. Cir. 2004).  Here, the Serenity Ponds are made

up of parts or components each of which is *prima facie*

classifiable under a different heading.  The second sentence of

GRI 3(a) provides that where "two or more headings each refer to

part only of the materials or substances contained in mixed or

---

[10](...continued)
one of them gives a more complete or precise
description of the goods[;] (b) Mixtures, composite
goods consisting of different materials or made up of
different components, and goods put up in sets for
retail sale, which cannot be classified by reference to
3(a), shall be classified as if they consisted of the
material or component which gives them their essential
character, insofar as this criterion is applicable[;
and] (c) When goods cannot be classified by reference
to 3(a) or 3(b), they shall be classified under the
heading which occurs last in numerical order among
those which equally merit consideration.

composite goods . . . those headings are to be regarded as equally specific in relation to those goods, even if one of them gives a more complete or precise description of the goods." Thus, the second sentence of GRI 3(a) leads to GRI 3(b).

In cases such as the present one, where classification pursuant to GRI 3(a) is not possible, the concept of "essential character" found in GRI 3(b) may direct the court to the proper resolution. *See Better Home Plastics Corp. v. United States*, 119 F.3d 969, 970-71 (Fed. Cir. 1997) (stating that "[p]ursuant to GRI 3(b), goods not classifiable under GRI 3(a) are classified by the 'component which gives them their essential character.'"). As there remain few cases addressing the meaning of essential character under the HTSUS, this Court continues to rely on cases decided under its predecessor, the Tariff Schedule of the United States ("TSUS"). *See Better Home Plastics Corp. v. United States*, 20 CIT 221, 224, 916 F. Supp. 1265, 1267 (1996) (stating that the TSUS "did utilize" the concept of essential character. Furthermore, in light of the absence of reported cases defining essential character under the HTSUS, courts may "look to case law under the TSUS for guidance."); *see also Structural Indus., Inc. v. United States*, 29 CIT __, __ , n.6, 360 F. Supp. 2d 1330, 1336, n.6 (2005) (stating that the definition of essential character under the TSUS has provided guidance to courts

interpreting tariff terms under the HTSUS.). Thus, in order to determine the essential character of composite merchandise under the TSUS, this Court has sought to determine which component is indispensable to the merchandise. *See Oak Laminates Div. of Oak Materials Group v. United States*, 8 CIT 175, 180, 628 F. Supp. 1577, 1581 (1984) (stating that "[i]ts essential character is that which is indispensable to the structure, core or condition of the article, *i.e.*, what it is." (citation omitted)). This inquiry is "factual in nature" and therefore will depend significantly on the circumstances of each individual case. *See Structural Indus., Inc. v. United States*, 356 F.3d 1366, 1370 (Fed. Cir. 2004); *see also Can. Vinyl Indus., Inc. v. United States*, 76 Cust. Ct. 1, 2, 408 F. Supp. 1377, 1378 (1976) (stating that determination of essential character is not an "exact science."), *aff'd* 64 C.C.P.A. 97, 555 F.2d 806 (1977). In weighing the multiple factors that may be present in any one case, the court must also be cognizant that

> [t]he factor which determines essential character will vary as between different kinds of goods. It may, for example, be determined by the nature of the material or component, its bulk, quantity, weight or value, or *by the role of a constituent material in relation to the use of the goods.*

*World Customs Organization, Harmonized Commodity Description and Coding System* 4, Explanatory Note, Rule 3(b) (VIII) (2d ed. 1996) (emphasis added) ("Explanatory Note").

The parties disagree as to which component imparts the essential character of the Serenity Ponds.  The Government contends that the plastic decorative sculpture, *i.e.*, the simulated rocks or the plastic bamboo, is the component which imparts the essential character.  In support of this conclusion, the Government observes that "[e]ach style of fountain is named separately and can be distinguished from the others based on differences in the design of the plastic components."  Def.'s Resp. at 14.  In other words, for the Government, the essential nature of each Serenity Pond results from the individual plastic sculpture that differentiates each style of the merchandise from the other models.  Next, the Government points out that the pump is not visible to the consumer and, therefore, plays no significant part in creating the "visual or decorative value of the article."  Def.'s Memo. at 9.  Instead, "it is the plastic components of the article that are visible and aesthetically appealing to a consumer."  *Id*. at 7.  Finally the Government states that, "[a] view of the imported fountain can be enjoyed by an observer even when the pump is not in operation."  *Id*. at 8.  Thus, in making its arguments, the Government relies on the visual aspect of the merchandise to make its case.

Conair disputes the Government's contention and asserts that the essential character of the Serenity Ponds is imparted by the

pump:

> While the appearance of the fountain's contoured
> plastic may be one factor in a consumer's determination
> as to which model of Serenity Pond to buy, the decision
> to buy a Serenity Pond in the first place is based
> entirely on the presence of the submersible pump and
> its ability to generate the sound of flowing water.
> Indeed, it is difficult to imagine that a consumer
> would buy an article advertised as a "fountain," . . .
> if the article could not produce flowing water.

Pl.'s Opp'n to Def.'s Cross-Mot. for Summ. J. and Resp. to Def.'s

Opp'n to Pl.'s Mot. for Summ. J. at 20.


As previously noted, here "there is no genuine dispute as to

the underlying factual issue of exactly what the merchandise is."

*Bausch & Lomb*, 148 F.3d at 1365.  "[I]f there is no genuine

dispute over the nature of the merchandise, [the Court] adjudges

on summary judgment the proper classification under which it

falls, the ultimate question in every classification case and one

that has always been treated as a question of law."  *Id.* at 1366.


That being the case, the court turns to the proper

classification of the Serenity Ponds.  In reaching the ultimate

question, the court finds that the Serenity Ponds' essential

character is imparted by the pump.  The parties agree that the

Serenity Ponds are "designed to 'create a tranquil atmosphere at

home or in the office,'"  Pl.'s Mat. Facts para. 1; Def.'s Resp.

Facts para. 1, and that they are "intended to appeal to the

visual and auditory senses" of the consumer.  Def.'s Mat. Facts

para. 2; Pl.'s Resp. Facts para. 2.  To the extent that the

Serenity Ponds succeed in creating this tranquil atmosphere, it

is necessarily the water flowing over the simulated landscape

that stimulates the visual and auditory senses.  Indeed, any

appeal to the auditory senses is present only when the pump is

transporting water to the top of the Serenity Pond, thus allowing

it to flow over the simulated rocks.

This conclusion is borne out by an examination of the

Serenity Ponds themselves.[11]  In Customs classification cases,

"the merchandise itself is often a potent witness." *Simod Am.*

*Corp. v. United States*, 872 F.2d 1572, 1578 (Fed. Cir. 1989)

(citing *Marshall Field & Co. v. United States*, 45 C.C.P.A. 72, 81

(1958)).  This examination leads to the conclusion that consumers

would not purchase the Serenity Ponds for the purpose of enjoying

the visual aspects of the plastic sculpture.  It is only when the

pump is running and the water is flowing that the Serenity Ponds

could be said to have any "visual or auditory" appeal or create

anything approaching "a tranquil atmosphere."  That is, the water

flowing over the sculptured plastic rocks gives them a more

---

[11]  The court has also engaged in an examination of the Serenity Pond samples provided by Conair.  Included among these samples are six models of the Serenity Ponds.  The models provided as samples are: (1) CP1, (2) CP1R, (3) CP2, (4) CP4, (5) CP5, and (6) CP7.

attractive look and also produces the sound of flowing water.

Although the pump may not be visible, it is nonetheless

indispensable to making the merchandise "what it is."  *Oak*

*Laminates*, 8 CIT at 180, 628 F. Supp. at 1581.

The direction given in the Explanatory Note to GRI 3(b)

favors the court's conclusion.  "The factor which determines

essential character will vary as between different kinds of

goods.  It may, for example, be determined by . . . *the role of a*

*constituent material in relation to the use of the goods*."

Explanatory Note, Rule 3(b) (VIII) (emphasis added).  The pump's

role in relation to the use of the Serenity Ponds is essential.[12]

While the plastic component contributes to the manner in which

---

[12]     In response to the court's request, each party has made a submission with respect to the value of the various components that make up the Serenity Ponds. *Conair Corporation v. United States*, Court No. 02-00383 (May 2, 2005), (order requesting additional information about the value of the pumps in relation to the goods); Plaintiffs *Declaration on the Cost of Components of Serenity Pond Models* ("Cost Declaration") at 1-4; Defendant's *Submission in Accordance With the Court's Order of May 2, 2005* ("Def.'s Submission").  The essential character of goods may "be determined by the nature of the material or component, its bulk, quantity, weight or *value*, or by the role of a constituent material in relation to the use of the goods."  Explanatory Note, Rule 3(b) (VIII) (emphasis added).  While there may be some doubt as to the accuracy of the plaintiff's submission, *see* Def.'s Submission at 2, it appears that with respect to each fountain model, the pump is the most valuable single component, and in each case the value of the pump exceeded the value of the plastic simulated rocks or similar decorative feature.  Cost Declaration paras. 3 & 4.  Thus, the value of the pump would tend to confirm it as the component giving the Serenity Ponds their essential character.

the water flows, and thus to the Serenity Ponds' auditory and visual appeal, without the pump the water doesn't flow at all. Therefore, it is the pump that is essential to the use of the goods.  Thus, as it is the pump that imparts each Serenity Pond its essential character, in accordance with GRI 3(b) the Serenity Ponds are properly classified as if they consisted of that component.

*B.    HQ 964361 Entitled to No Deference*

The Government contends that HQ 964361, denying the plaintiff's request for reconsideration, is entitled to judicial deference because of its power to persuade in accordance with *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) ("The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.").  Specifically, the Government states that

> [i]n HQ 964361, Customs considered the competing claims
> to classification of the plaintiff's calming pond and
> serenity pond, and the applicable GRIs, tariff
> provisions, chapter notes and Explanatory Notes.
> Customs found that the imported ponds could not be
> classified under GRI 1 because the tariff provisions
> covering the various parts of the pond were "equally
> specific in relation to the good."  Customs then
> considered the essential character of the ponds in
> light of the plaintiff's arguments that the ponds
> should be classified as pumps.  Customs determined that
> the essential character of the ponds was not

attributable to the pump but to the plastic articles.

Def.'s Opp'n at 15 (citations omitted).

In order to determine whether a particular ruling qualifies for *Skidmore* deference, the court engages in a four-factor analysis that weighs the "thoroughness evident in [the ruling's] consideration, the validity of [the ruling's] reasoning, [the ruling's] consistency with earlier and later pronouncements, and all those factors which give [the ruling] power to persuade . . . ." *Skidmore*, 323 U.S. at 140; *see also United States v. Mead Corp.*, 533 U.S. 218, 235 (2001) (restating the *Skidmore* factors as "its writer's thoroughness, logic, and expertness, its fit with prior interpretations, and any other sources of weight.").

The court finds that the HQ 964361 is not entitled to deference because it lacks those qualities that would give it the power to persuade. First, HQ 964361, although presenting a thorough analysis of the relevant law, fails to demonstrate how that law applies to the facts of the present case. Instead, Customs relies on conclusory statements. For example, Customs states that "[e]ssential character has frequently been construed to mean the attribute which strongly marks or serves to distinguish what an article is. After a careful consideration of

this issue, we determine that the calming pond is essentially a plastic decorative article." HQ 964361 at 5. Lacking from this conclusion, however, is any mention of the factors relied upon during the "careful consideration" in which Customs purportedly engaged. Customs later reiterates its conclusion with no further analysis: "As stated above, it is our position that the calming pond is essentially a plastic decorative article." *Id*. Finally, in reaching its ultimate conclusion, Customs provides no analysis whatsoever: "The calming pond serves a decorative function without the pump, e.g., when the pump is not on." *Id*. At no point does Customs offer reasons for arriving at this conclusion. Thus, a review based on the four part test does not support the conclusion that the HQ 964361 deserves *Skidmore* deference. First, Customs' brief and conclusory statements demonstrate little showing of thoroughness in the ruling's consideration. Second, while the ruling contains a valid consideration of the proper law, rules and Explanatory Notes, it is lacking in any valid application of those matters to the facts. Third, although an attempt is made to demonstrate consistency with earlier rulings, there is nothing to indicate that those rulings were the result of analyses any more thorough than the one at issue here. Finally, HQ 964361 offers no further factors that would lend any additional power to persuade to the ruling. Thus, the Headquarters Ruling Letter is akin to the "dismissive analysis"

found wanting in *Warner-Lambert Co. v. United States*, 407 F.3d 1207, 1210 (Fed. Cir. 2005).  In light of Customs' failure to engage in a thorough and well reasoned analysis, the court finds that HQ 964361 is not entitled to deference under *Skidmore*.

CONCLUSION

The court finds that because the essential character of the Serenity Ponds is imparted by the pump component, they are properly classified under subheading 8413.70.2004 of the HTSUS as "Pumps for liquids, whether or not fitted with a measuring device; liquid elevators; part thereof; . . . Other centrifugal pumps . . . Other . . . Submersible pumps."  Therefore, the court grants Conair's motion for summary judgment and denies that of defendant United States.  Judgment shall be entered accordingly.

_____/s/_____

Richard K. Eaton

Dated:    August 12, 2005
          New York, New York